UNION TRACTION COMPANY OF INDIANA *v.* BERRY, ADMINISTRATOR.

[No. 23,230. Filed January 31, 1919. Rehearing denied November 7, 1919.]

1. NEGLIGENCE.—*Ordinary Care.—Jury Question.*—It is the duty of the jury to determine, as a question of fact in each case, whether the conduct of the party on whom a duty rests measures up to the standard of ordinary care as defined by the law. pp. 519, 522, 527, 528.

2. NEGLIGENCE.—*Duty to Use Care.—Rule as to Carriers.*—The law does not impose a different or higher duty on carriers of passengers with reference to the exercise of care than it imposes on persons or corporations sustaining other relations involving the exercise of care. (*Bedford, etc., R. Co.* v. *Rainbolt,* 99 Ind. 551; *Louisville, etc., R. Co.* v. *Snyder,* 117 Ind. 435, disapproved.) pp. 520, 523.

3. NEGLIGENCE.—*Definition.—Degrees.—Duty.*—Negligence is the neglect or violation of the duty to use care; there can be no degrees of negligence, and hence no degrees of duty. p. 520.

4. NEGLIGENCE.—*Duty to Use Care.—Question of Law.*—Whether a given relation existing between parties gives rise to a duty to use care is a pure question of law. p. 520.

5. NEGLIGENCE.—*Duty.—"Due Care."—Standard of Care.—Instructions.*—In submitting to a jury a question of negligence, which is a mixed question of law and fact, the court is required to define the duty which the law imposes, and also to state the rule fixing the standard of care which will measure up to such duty; the duty remains the same under all circumstances and is defined as "due care," "ordinary care," or "reasonable care," which terms have the same significance, and the

Union Traction Co. *v.* Berry, Admr.—188 Ind. 514.

standard of care measuring up to such duty is the care that a person of ordinary prudence would regard as reasonably necessary or proper under the circumstances. pp. 521, 528.

6. NEGLIGENCE.—*"Ordinary Care."*—"Ordinary care" requires that the acts of care employed and the precautions used must be commensurate to the danger involved under the circumstances of the particular case. p. 522.

7. TRIAL.—*Instructions.— Province of Jury.— Negligence.*— The use of such terms as "slight care," "great care," or other like expressions in instructions, as indicating the quantum of care that the law exacts under special conditions and circumstances, is misleading, and constitutes an invasion of the province of the jury. pp. 523, 529.

8. NEGLIGENCE.—*Carriers.—Protection of Passengers.*—If greater precautions are required to protect passengers while in transit, it is because the conditions and circumstances surrounding them are different and involve more danger, and not because of the relation of carrier and passenger. pp. 524, 527.

9. APPEAL.—*Erroneous Instruction.—Negligence.—Due Care.*— In an action for wrongful death, an instruction which held the defendant railroad company to the "highest degree of care," etc., was erroneous, and the court on appeal cannot hold it as harmless where, in view of the evidence, the question of the defendant's negligence was so close that the jury might have been influenced by the erroneous instruction. p. 525.

10. CARRIERS.—*Ordinary Care.—Res Ipsa Loquitor.*—The rule holding carriers, for the protection of passengers, to the degree of care that a person of ordinary prudence would regard as necessary under the particular circumstances does not abrogate the rule of *res ipsa loquitor* as applied in cases involving injuries to passengers, since the latter rule does not depend on the standard of care imposed, but on the nature of the occurrence out of which the injury arises, and may be applied under the rule holding the carrier to ordinary care. p. 530.

From Marion Superior Court (99,476) ; *Henry N. Spaan,* Special Judge.

Action by Noah D. Berry, administrator of the estate of Charles Elliot, deceased, against the Union Traction Company. From a judgment for the plaintiff, the defendant appeals. *Reversed.*

*J. A. Van Osdol, Joseph R. Morgan, Frederick E. Matson, Ralph K. Kane* and *James A. Ross,* for appellant.

*Charles E. Cox, Frank S. Roby, Edward W. Little* and *Earl W. Little,* for appellee.

LAIRY, J.—Appellee, as administrator of the estate of Charles Elliott, recovered a judgment in the trial court for damages resulting from the death of said Elliott, which he alleges was caused by appellant in the operation of one of its cars.

The record shows that Elliott was a passenger on one of appellant's street cars in the city of Muncie at the time he received the injury which caused his death. The car on which he was a passenger was operated on a track which extended across a bridge of White river, and which was constructed so close to the girders as to leave only a narrow space between the superstructure of the bridge and the side of the car passing over the bridge on said track. The car on which he was riding was an open car with cross seats extending entirely across the car and with a running board along the right side. When he boarded the car he took a standing position on the rear platform, and as the car approached the bridge he decided to change his position and to occupy one of the cross seats. In attempting to do so, he stepped from the rear platform to the running board when the car was close to the bridge and, while on the running board attempting to enter a seat, his body came in contact with the superstructure of the bridge, causing him to be knocked from the running board and killed.

The complaint alleges that the space between the superstructure of the bridge and the side of a passing car was not sufficiently wide to permit the decedent and other passengers on the car to pass between the same, which fact was well known to the defendant. It is not alleged that such condition was due to any negligence or want of proper care on the part of appellant in the

construction of either the bridge or the tracks. The negligence imputed to appellant by the complaint is charged in the language following: "Plaintiff further says that defendant was negligent and careless in the operation of said car at said time and place in this, to wit: That the defendant company ran said car in such close proximity to said post and structural work of said bridge as to endanger the lives and limbs of the decedent and other passengers while riding on defendant's said cars; that the defendant negligently and carelessly failed to give the decedent any warning of any kind, and of the car's approach to said bridge, and of the danger of colliding with said posts and girders."

By the answer of general denial, an issue of fact was formed as to the negligence of appellant, which was submitted to the jury to be decided. Appellee asserted that, in the discharge of the duty to exercise due care for the safety of appellee's decedent, it was necessary to warn him of the danger which threatened him and which he was approaching, and that appellant failed to take such precaution. This was denied by appellant. This presented an issue of fact which the jury was required to decide from a consideration of all the surrounding conditions and the attendant circumstances as disclosed by the evidence. The evidence shows without dispute that no notice was given to appellee's decedent of the approach of the car to the place of danger described. This narrows the issue of fact thus presented to the single question: Under the existing conditions and the attending circumstances as shown by the evidence, was it incumbent on appellant to take the precaution of warning appellee's decedent of the car's approach to the bridge in order to measure up to the standard of care imposed on it by law? If the jury determined that the standard of care imposed required the exercise of such precaution, under the conditions and

circumstances shown, this established the negligence of appellant.

As bearing on this question there was evidence to show that the track was so close to the side of the bridge as to expose persons on the running boards or passing cars to the danger of coming in contact with the superstructure of the bridge, and that such danger was known to appellant and its employes; and that such danger had been recognized by such employes in stopping cars before entering the bridge and requiring passengers standing on the running board to get inside the car; and in some instances, when there was not room inside the car, requiring passengers standing on the running board to alight and walk across the bridge after which they were permitted again to board the car. There was also evidence from which the jury could have properly inferred that appellee's decedent knew of the dangerous condition, and knew that the car was close to the bridge when he stepped from the platform to the running board. On this point there is evidence that Elliott had lived on West Jackson street where he kept a grocery for about four months immediately preceding his death, and that it was necessary for him to cross the bridge, where he was afterward killed, every time that he went into the business section of the city; that he had crossed this bridge almost daily and sometimes twice a day during the time he had lived there, frequently going on the street car, but generally using his delivery wagon. The evidence further discloses that the car on which Elliott was riding was stopped just prior to the accident with its front end from six to twelve feet west of the entrance to the bridge, for the purpose of receiving passengers. It is undisputed that when the car started from this point it moved up an incline to the entrance of the bridge at a slow rate of speed; that Elliott was on the rear platform of the car facing the bridge; that no one was on

the running board except the conductor; that after the car started the conductor, after looking back to see that no one was on the running board, stepped up into the car and began collecting fares; that he did not again look back before the accident, and that he gave no warning of the danger.

From a consideration of the conditions and circumstances disclosed by the evidence, the jury was required to decide whether a person of reasonable prudence, occupying the position of conductor of the car, would have regarded it necessary or prudent, in the exercise of reasonable care for the safety of the passengers, to give a signal or warning of the danger. If, in the light of the evidence, the jury believed that the exercise of due care would have dictated such a precaution to a person of reasonable prudence so situated, then it was justified in finding that the conductor was negligent in failing to observe it; but, on the other hand, if the jury decided that the exercise of the reasonable care under the conditions and circumstances shown would not have dictated such a course to a person of ordinary prudence, then the appellant should have been acquitted of the charge of negligence. This presented a pure question of fact for the jury to decide, and it was not the province of the court, by any instruction or otherwise, to assume or indicate that the conduct of the defendant as disclosed by the evidence either did or did not measure up to the standard of care imposed by law.

As bearing on the issue of negligence, the court gave the following instruction: "If you find from the evidence in this case that on and about the 23rd day of May, 1914, the defendant was a common carrier of passengers, then I instruct you that it was held to the highest degree of care and diligence for the safety of passengers consistent with the mode of conveyance employed, and that the omission of the defendant to exer-

cise the highest degree of practicable care constituted negligence on its part."

By the first part of this instruction, preceding the conjunction "and," the court undertakes to define the duty which the law imposes on appellant as a carrier of passengers, and by the latter part the court attempts to direct the jury as to the application of the rule to the case on trial. Objection is made to this instruction on the ground that it invades the province of the jury, the objection being specifically directed to the latter part, but this part is so closely connected in meaning with what precedes it as to require a consideration of the instruction as a whole. By this instruction the court told the jury, in substance, that the law imposed a different and a higher duty on carriers of passengers with reference to the exercise of care than rested on persons or corporations sustaining other relations involving the exercise of care. In the case of *Bedford, etc., R. Co.* v. *Rainbolt* (1885), 99 Ind. 551, the court said: "The rule that there may be degrees in negligence has long ago been discarded in this state, and when it is said that an occurrence came about through the slight negligence or gross negligence of another, it is, in either case, nothing more than saying that such person was negligent." Negligence is the neglect or violation of the duty to use care. If there can be no degrees of negligence, it must follow that there can be no degrees of duty. Duty is an absolute term. The law requires nothing more than duty; it will excuse nothing less. The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation is shown as gives rise to such duty. In determining whether the relation shown gives rise to a duty to use care, the court decides a pure question of

law. This question cannot be submitted to a jury. Where a duty to exercise care exists, it is always the same regardless of the nature of the relation out of which it arises. It cannot be said that the duty to use care which arises out of the relation of carrier and passenger differs in kind, character, or degree from the duty which arises out of the relation of master and servant, or out of any other relation which imposes the legal duty to use care.

In submitting the determination to a jury of a question of negligence, which is a mixed question of law and fact, the court is required to define the duty which 5. the law imposes. This duty is defined by the law as "due care," "ordinary care," or "reasonable care," which terms are regarded by the courts as having the same significance. It is also the duty of the court to state the rule fixing the standard of care which will measure up to the duty imposed by law. The court should then leave it to the jury to decide whether the acts and conduct of the defendant in respect to the matter before the court measures up to the standard of care fixed by the law. In defining the duty and fixing the standard of care by which the jury is to measure the conduct of the defendant, the court does not consider the facts of the particular case. The duty is the same under all relations, and the standard of care which will measure up to the duty in all cases is such care as a person of reasonable or ordinary prudence would exercise in view of all the conditions and circumstances as disclosed by the evidence in the particular case. It is for the jury to consider the conditions and circumstances disclosed by the evidence in determining what action should have been taken or avoided, what precautions should have been employed, and what course of conduct should have been pursued in order to measure up to the duty of "due care" which the law imposes. In determining this fact

the jury applies the standard furnished by the court, which is, What would a person of ordinary prudence have regarded as reasonably necessary or proper under the circumstances shown?

It has been frequently said that ordinary care requires that the acts of care employed and the precautions used must be commensurate to the danger involved under the circumstances of the particular case. Upon this proposition reasonable minds could not well differ. In a recent decision by this court it was said: "But ordinary care ebbs and flows with the danger to be fairly anticipated by a man of reasonable prudence from the circumstances and conditions involved in each case." *Louisville, etc., Traction Co.* v. *Walker* (1911), 177 Ind. 38, 97 N. E. 151. It may be true, as matter of fact, that the acts of care and precaution which ordinary prudence would suggest, and which would be regarded by a jury as reasonable under circumstances indicating little danger, might be regarded as entirely inadequate under circumstances which would disclose the employment of dangerous agencies involving great danger to life and valuable property; but, in all cases and under all circumstances, it is for the jury to determine the character and the extent of the danger involved, and the amount of care and caution which reasonable care requires in guarding against such danger. The quantum or amount of care required to measure up to "reasonable care" under the circumstances of each particular case is a matter peculiarly within the province of the jury. The quantum of care, the safeguards to be used, the precautions to be observed, the care and foresight to be exercised in each case, must be as variable as the facts involved in different cases are various. It is not practicable for a court to fix and declare as a matter of law the quantum of care or the degree of care that should be exercised under

the conditions and circumstances peculiar to any special case; that duty rests with the jury to be performed under proper instructions from the court.

The use of such terms as "slight care," "great care," "highest degree of care," or other like expressions in instructions as indicating the quantum of care

7. the law exacts under special conditions and circumstances, is misleading, and when so used they constitute an invasion of the province of the jury, whose function it is to determine what amount of care is required to measure up to the duty imposed by law under the facts of the particular case. The law imposes but one duty in such cases, and that is the duty to use due care; and the law recognizes only one standard by which the quantum of care can be measured, and that is the care which a person of ordinary prudence would exercise under like circumstances.

The court is of the opinion that the language of which appellant complains invades the province of the jury.

If the words "highest degree of care practical"

2. are given any significance at all, they must mean, as applied to this case, that the conductor was required to possess and exercise something more than ordinary judgment, ordinary foresight, ordinary prudence and ordinary care to prevent the injury which happened. It has been already stated in this opinion that the duty imposed by the law to use due care is absolute, and is the same under all relations which give rise to a duty to use care. The relation of carrier and passenger does not differ from other relations in this regard. This has been recognized by the courts of this state in holding that a carrier is required to use only ordinary care in keeping its stations and platforms safe for the use of passengers, and in providing facilities for boarding and leaving trains. *Louisville, etc., Traction*

*Co.* v. *Walker, supra; Pennsylvania Co.* v. *Marion* (1885), 104 Ind. 239, 3 N. E. 874.

If greater precautions are required to protect passengers while in transit, it is because the conditions and circumstances surrounding them are different and involve more danger, and not because of the existing relation. As has been said, the surrounding conditions and attending circumstances, as well as the danger involved, present questions for the consideration of the jury in determining what precautions reasonable care required under the facts disclosed in the particular case. This presents a question of fact for the jury, and not one of law for the court. In view of the reasons here presented the court is impelled to disapprove the rule stated in the cases of *Bedford, etc., R. Co.* v. *Rainbolt, supra; Louisville, etc., R. Co.* v. *Snyder* (1889), 117 Ind. 435, 20 N. E. 284, 3 L. R. A. 434, 10 Am. St. 60, and both of those cases are overruled as to the point here involved. In numerous other opinions by this court and the Appellate Court language may be found giving expression to the thought that more than due care or ordinary care was required under certain conditions. This may be true as a matter of fact, but it is not generally true as a matter of law. The court should not tell the jury as a matter of law that a defendant is required to exercise more than ordinary care. What precautions ordinary care required under the circumstances shown in the case on trial should be submitted to the jury as a question of fact.

In view of the importance of the question, the court has felt justified in discussing it at some length and giving its reasons in some detail. Not because the question is new, but because our opinions seem to be somewhat confused and conflicting.

If the conditions and circumstances disclosed by the evidence were of such a character as to show negligence

9. on the part of defendant so clearly and conclusively as to justify this court in saying that the verdict could not have been different in the absence of the erroneous instruction, then the court might decline to reverse the judgment on the ground that it was clearly right, and that the error was not prejudicial; but, under the evidence in this case the question of defendant's negligence was so close that the judgment of the jury might have been influenced either way by the slightest indication of the views of the court on the subject. In the light of the evidence it is impossible for this court to say that the error in this instruction did not influence the verdict.

In view of the conclusion reached, other questions which may not arise on a second trial are not considered.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

## ON PETITION FOR REHEARING.

LAIRY, C. J.—In the adoption of the original opinion the court acted advisedly with full knowledge of the great current of authority with which it is apparently in conflict. On petition for rehearing, able briefs have been filed in which authorities from this state and from other states are arrayed and discussed. It must be conceded that the cases generally state the rule to be that carriers of passengers are required to use the highest degree of care practicable; but we cannot think that the courts by the use of such language intended to state that the law exacts a different standard of duty in cases where the relation of carrier and passenger exists from that which it exacts in cases where other relations are shown which give rise to a duty to use care. If it was the purpose to state a distinct standard of duty exacted by law, it is certain that no court has ever undertaken

to define it. The courts have defined the standard of "ordinary care" as "such care as a person of ordinary prudence would use under the facts, circumstances and conditions disclosed by the evidence in a particular case." Under this definition, the party owing the duty to use ordinary care must take into consideration the character and extent of the dangers incident to the business in which he is engaged, and he must regard the conditions under which the thing is done and the circumstances which surround and attend it; and, in view of the nature of the act, undertaking, or business, the dangers incident thereto, and the surrounding conditions and attendant circumstances, he must foresee every danger that a person of reasonable foresight would anticipate, and he must take every means of guarding against such dangers that reasonable judgment and prudence would suggest, and, in case he fails to do an act or to observe a precaution which would have been done or observed under like conditions by a person of ordinary prudence, he fails in that particular to measure up to the standard of duty expressed by the term "ordinary care."

The duty to use ordinary care requires the party on whom the duty rests to consider the character of the act, undertaking, or business in which he is engaged and the probable dangers incident thereto, as well as all other existing conditions and circumstances, and in determining the means to be used, the precautions to be adopted and the care to be generally exercised in view of the probable dangers, and the surrounding circumstances, he is required to exercise such intelligence, foresight, judgment and prudence as a person possessed of ordinary intellectual endowments would exercise in doing the same thing under like conditions and circumstances. This being true, any standard of duty which would exact more than ordinary care would require

more care than a person of ordinary intellectual endowments would be capable of exercising.

It is the duty of the jury to determine, as a question of fact in each case, whether the conduct of the party on whom the duty rests measures up to the standard of ordinary care as defined by the law. In cases where the act, undertaking or business out of which the injury arises is one involving great danger to life or valuable property by reason of the dangerous character of the machinery or other agencies employed, the jury may be justified in finding that a person of ordinary prudence, in view of the danger and the existting conditions and circumstances, would have made use of every reasonable means available, and would have exercised every precaution which reasonable prudence could suggest, to guard against the danger. Conduct on the part of a defendant which measures up to. the standard of duty under such conditions and circumstances constitutes ordinary care and nothing more.

In cases where the danger involved is slight, and where the consequences likely to result would not affect life or valuable property, the jury may rightly find as a fact that a person of ordinary prudence would not have adopted the same means or have observed the same precautions as would be required of such a person in the presence of greater danger involving more serious results. It thus appears that the character of the means to be employed, the precautions to be observed, and the acts to be performed or avoided in guarding against danger and preventing injury may vary in different cases according to the dangers involved, the consequences to be apprehended and the other circumstances shown by the evidence. Conduct which would measure up to the standard of ordinary care in one case might fall far short when measured

by the same standard in another case involving other conditions and circumstances.

The duty to use care is a matter of law which arises out of the relation between parties. The duty is the same under all relations in which it arises. The duty does not differ in cases because the relations out of which it arises are different. The standard to be applied in all cases is the same; but the conduct required to measure up to the standard of duty may differ according to the conditions and circumstances shown by the evidence in each case.

5.

It is for the jury to say, as a matter of fact, what conduct will fill the requirement of ordinary care. In deciding the question of fact the jury should not consider the relation out of which the duty arises.

1.

It can make no difference whether the relation between the parties be passenger and carrier, employer and employe, bailor and bailee, or any other relation out of which a duty to use care arises as a matter of law. In deciding the question of fact under discussion, the jury should consider only the dangers involved, the consequences to be apprehended as a result of such danger, and the conditions shown by the evidence.

All persons and corporations engaged as common carriers of passengers are not bound as a matter of law to observe the same precautions and to exercise the same care and vigilance to secure the safety of passengers, for the reason that the means of transportation adopted by one may be stage coaches drawn by horses at a moderate speed over good roads under circumstances which involve little danger to passengers; while the other may carry passengers in coaches drawn by locomotives over railroads at high speed under conditions involving much greater danger to the lives and limbs of the passengers. It may well be that tests which would be regarded as a matter of fact to be sufficient and adequate, when ap-

plied to determine the strength and soundness of the wheels or other parts of the equipment of a stagecoach, would be entirely inadequate as a matter of fact, if employed as a means of testing the parts of locomotives or coaches to determine their fitness to withstand the strain to which they were to be subjected. The duty which the law imposes is the same in both cases, and the standard by which the care is to be measured, in determining whether it comes up to the duty, is the same in both; but when the jury is called on to apply the standard furnished by the court to the conditions and circumstances shown by the evidence, a question of fact arises which it is the province of the jury to decide.

The confusion which has arisen and which has led to the statement in some cases that the law imposes on carriers the duty to exercise the highest degree
7. of care has grown out of a failure to distinguish between what may be decided by a court as a matter of law and what may be determined by a jury as a matter of fact from a consideration of conditions and circumstances disclosed by evidence. The evidence may be of such a nature as to justify a jury in exacting the highest precautions for safety that would suggest themselves to a person of reasonable prudence; but it is not the province of the court to consider the evidence and to state as a matter of law that the circumstances and conditions require the highest precautions. It is not the province of the court to say in any case that the defendant was required under the circumstances shown to use the highest and most effective precautions which would occur to the mind of a person of ordinary intelligence, prudence and skill. If such a requirement is proper under the evidence, it is the province of the jury to so determine; and a court cannot so decide and state without passing on a question of fact and thus in-

vading the province of the jury. 'In the use of the expression, "highest degree of care," by courts in opinions, there can be little doubt that it was intended to apply to what the jury might properly exact from a consideration of the dangers to be anticipated and the facts and conditions under which the injury occurred as shown by the evidence. That is the sense in which the expression is generally used in the opinions and text-books, and in that sense it may not be inapt, although it is generally inaccurate. It does not follow, however, that the expression can be employed in instructions as stating a standard of duty imposed by law. Such a standard is incapable of a definition which would enable a jury to apply it intelligently to the conditions and circumstances disclosed by the evidence in a particular case. No court should prescribe a rule for the guidance of a jury unless it is able to define and explain the rule in such a way as to enable the jury to apply it intelligently.

It has been suggested that a departure from the rule which imposes on carriers the duty to use the highest degree of care practicable to preserve the safety

10. of passengers has the effect of abrogating the rule of *res ipsa loquitur* as applied in cases involving injuries to passengers. The suggestion is without force. The existence or application of the rule of *res ipsa loquitur* does not in any way depend on the standard of care imposed by law; but it depends entirely on the nature of the occurrence out of which the injury arises. Where the agency or thing which causes the injury is in the exclusive control of the defendant or his agents, and the occurrence which produces the injury is one which in its nature does not ordinarily happen if those in charge exercise due care, the thing itself speaks; and proof of such an occurrence makes a *prima facie* case of negligence against the defendant. The rule is one of limited application, and it would be

out of place here for the court to attempt to state the limitations, as the rule has no application in this case, and is mentioned only incidentally. It may be stated, however, that the application of the rule has not been limited to cases involving injuries to passengers, but it has been applied to cases in which ordinary care has always been the recognized standard. *City of Decatur* v. *Eady* (1916), 186 Ind. 205, 115 N. E. 577, L. R. A. 1917E 242; *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N. E. 365, Ann. Cas. 1917A 474.

The court as a whole has carefully considered the briefs filed on petition for rehearing; and after such consideration and after consultation every member of the court is satisfied that the rule announced in the original opinion is correct in principle. The court has not reached its conclusion by arrogating to itself any superior wisdom, or by assuming to possess any superior powers of logic or reason; but, from a careful and conscientious consideration of the reasons which we have endeavored to state, the conclusion reached seemed to be inevitable, and it was accordingly adopted.

Rehearing denied.

Note.—Reported in 121 N. E. 655, 124 N. E. 737.