**Joseph ZAHORA, Plaintiff-Appellant,**

**v.**

**HARNISCHFEGER CORPORATION, Defendant-Appellee.**

**No. 16244.**

United States Court of Appeals Seventh Circuit.

Nov. 27, 1968.

Saul I. Ruman, Hammond, Ind., for plaintiff-appellant.

William L. Travis, Joseph E. Tinkham, James E. Schreiner, Hammond, Ind., for defendant-appellee, Travis & Tinkham, Hammond, Ind., of counsel.

Before CASTLE, Chief Judge, MAJOR, Senior Circuit Judge, and HASTINGS, Circuit Judge.

HASTINGS, Circuit Judge.

Plaintiff, Joseph Zahora, appeals from the entry of summary judgment by the district court in favor of defendant, Harnischfeger Corporation. We shall summarize the salient facts relevant to this appeal.

This diversity action was instituted by plaintiff to recover damages for personal injuries sustained by him on April 20, 1965 while attempting to determine the cause of an electrical power failure in the bridge of an overhead crane manufactured by defendant corporation for Youngstown Sheet and Tube Company plant at East Chicago, Indiana. Defendant corporation is incorporated under the laws of the State of Wisconsin, with its principle place of business in a state other than the State of Indiana. Youngstown purchased the crane in July, 1963 and accepted it in April, 1964.

Defendant corporation was not obligated by contract or otherwise to install, maintain, repair or operate the crane in question. June, 1964, almost one year prior to the complained of mishap, represents the last date any employee of defendant had dealings with Youngstown pertaining to this crane.

At the time of the accident, plaintiff was an electrician in the employ of a third party electrical contractor, Fischbach, Moore and Morrissey. This concern had been retained by Youngstown to maintain and to operate the crane. Plaintiff was not a regular crane maintenance man for Fischbach, and the date of the accident signifies his first encounter, as a Fischbach employee, with a Youngstown crane.

This encounter with its unfortunate ending was prompted when a Fischbach foreman, Joe Ferro, directed plaintiff to leave his main floor work post to determine why a bridge of the crane was malfunctioning.

According to plaintiff's deposition, plaintiff and Ferro went to the top of the bridge to check the crane's fuse and control cabinet in an effort to discover the trouble. Failing to uncover any problem with the cabinet, the two men descended to the crane's operating cab to inspect its drum controls. Finding no irregularities, they returned to the top of the bridge. At that point, Ferro suggested that plaintiff go down to a repair platform situated at the northwest end of the bridge to check whether the collector's shoes on the northwestern side of the bridge were making sufficient contact with the hot rails on the side of the building.

While plaintiff was completely within the confines of the repair platform, the crane operator, Lester Shinneman, temporarily activated the bridge's power by causing the trolley to collide with the north end of the building. This impact caused a sufficient reaction with the rails to create enough power to move the bridge. Noting a spark in either the collector's shoes or the rails during this procedure, plaintiff decided he should " * * * see what is wrong with these shoes." Prior to making this investigation, he stated that he warned the crane operator "[D]on't you dare move anything."; Shinneman, who was inside of the enclosed cab, allegedly nodded in response to this admonition. After issuing this exhortation, plaintiff attempted to hit the shoes with a two-by-four (2 x 4) he found on the platform. Unable to reach the shoe from a vantage point on the side of the platform, plaintiff extended a portion of his body out over the repair cage. After tapping the shoes a few times, plaintiff heard something moving and at that moment was crushed by the crane's cab as it proceeded in a northerly direction.

Shinneman's account of the events leading up to the mishap is substantially in accord with the plaintiff's version. Aside from a discrepancy concerning where on the crane the foreman and plaintiff met the operator prior to the accident, the only significant variance between the two depositions springs out of silence rather than overt conflicts in statements.

The operator's deposition does not mention the plaintiff's alleged warning nor does it allude to the alleged response thereto. In addition, Shinneman indicates that he did look to the left (north), in the direction of the platform from which the plaintiff was working, and stated that " * * * there was nobody in sight." When asked whether it was possible for someone to be barred from the operator's vision due to the construction of the cab, Shinneman answered, "[W]ell, it was probably by that [cab] door [bottom half of the door was solid] being there like it was."

Based essentially upon these facts, plaintiff charged defendant Harnischfeger with negligence and/or wanton and/or willful misconduct in the design, manufacture, installation, maintenance and repair of the Youngstown crane and its supporting structure. Plaintiff further alleged that defendant Harnischfeger breached both express and implied warranties in the manufacture and sale of the crane and its supporting structure. Plaintiff contends that as a proximate result of this conduct he sustained injury while engaged in the performance of his work duties. Thereafter, defendant moved for summary judgment.

The district court granted defendant's motion after examining the affidavits in support of the motion, the pictures of the overhead crane and the depositions of the operator and plaintiff. From these materials, the trial court concluded that defendant was "under no duty to insure against injury to a repairman who might force his body half way out of the repair cage into the pathway of the trolley to examine a shoe while the trolley and cab were in operation in

close proximity." The court further concluded that the alleged defective design of the crane could not have proximately caused the mishap and injuries complained of. In making this determination with respect to the issue of proximate cause, the court surmised that the sole proximate cause rested in the operator's failure to heed plaintiff's warning not to move the cab or trolley and in the operator's failure to look in the direction of the platform when he moved the trolley and cab.

The issue before us is whether the district court properly applied Rule 56, Federal Rules of Civil Procedure, 28 U. S.C.A., in granting defendant's motion for summary judgment. [1]

The district court had before it and considered the pleadings, depositions of plaintiff and Shinneman (the cab operator), answers to interrogatories, affidavits in support of and in opposition to the motion for summary judgment, and certain relevant photographs. We have examined and considered the same materials on appeal.

Recently, in Carter v. Williams, 7 Cir., 361 F.2d 189, 193 (1966), we reaffirmed our view of the applicable law in this circuit as expressed in Moutoux v. Gulling Auto Electric, Inc., 7 Cir., 295 F.2d 573, 576 (1961), where we said:

"While Rule 56 does contemplate that 'the allegations of fact in the pleadings may be pierced' by admissions, depositions and affidavits which show, in fact, that no genuine issues of fact exist. Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 179 F.2d 265, 267, unless such evidentiary matters submitted in a particular case clearly show 'that there was no issue of fact to be tried', the court 'is not permitted to try on the affidavits submitted an issue of fact which is presented by the pleadings.' Campana Corp. v. Harrison, 7 Cir., 135 F.2d 334, 335–336. If, upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied. Mitchell v. Pilgrim Holiness Church Corp., 7 Cir., 210 F.2d 879, certiorari denied 347 U.S. 1013, 74 S.Ct. 867, 98 L.Ed. 1136 * * *."

We have carefully considered the memorandum of the district court. As its basis for granting summary judgment for defendant, it concluded that under the circumstances of this case, the defendant manufacturer was under no duty to plaintiff; the alleged defects in the design of the crane could not have proximately caused plaintiff's alleged injuries; and consequently, defendant was not negligent as a matter of law.

Being a diversity action, Indiana substantive law controls the case's disposition. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Evans v. General Motors Corporation, 7 Cir., 359 F.2d 822 (1966), cert. den. 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70.

Under Indiana law, the nature of the duty a manufacturer owes to those who use its products is a question of law for the court. Evans v. General Motors Corporation, supra; Mulligan v. Otis Elevator Company, 7 Cir., 322 F.2d 633 (1963); Union Transaction Co. of Indiana v. Berry, 188 Ind. 514, 121 N.E. 655, 124 N.E. 737, 32 A.L.R. 1171 (1919).

In measuring the duty of a manufacturer, it is clear there is no duty to produce an accident or fool-proof product; however, it is equally clear the manufacturer is legally bound to design

1. Rule 56(c) in relevant part reads: " * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

and build a product which is reasonably fit and safe for the purpose for which it is intended. Schemel v. General Motors Corporation, 7 Cir., 384 F.2d 802 (1967), cert. den. 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134; Ilnicki v. Montgomery Ward Co., 7 Cir., 371 F.2d 195 (1966); Krentz v. Union Carbide Corporation, 6 Cir., 365 F.2d 113 (1966); J. I. Case Company v. Sandefur, 245 Ind. 213, 197 N.E.2d 519 (1964). A manufacturer has a duty to design its product in a manner to avoid hidden defects and latent or concealed dangers. J. I. Case Company v. Sandefur, supra.

The trial court was persuaded that defendant "was under no duty to insure against injury to a repairman who might force his body half-way out of the repair cage into the pathway of the trolley to examine a shoe while the trolley and cab were in operation in close proximity", citing Evans v. General Motors Corp., 7 Cir., 359 F.2d 822 (1966).

However, on its facts, *Evans* is distinguishable from the case at bar. In *Evans*, the product was obviously fit for the purpose for which it was made. Further, plaintiff in that case neither asserted that defendant's product caused the complained of accident nor contended that defendant's product could have been designed to avoid the accident. In the instant case, it may be and is questioned whether the product was suited for the purpose for which it was intended. Plaintiff does suggest the possibility of a more pragmatic design to guard against such accidents; and plaintiff does assert the alleged negligent design proximately caused his injuries.

This case is distinguishable from Mulligan v. Otis Elevator Company, supra; a case upon which the defendant places great reliance.

In *Mulligan,* the plaintiff was injured when he exposed his head over the top of an elevator gate in an attempt to level the elevator with the floor. We affirmed a judgment for defendant reasoning the danger in plaintiff's conduct was obvious; there was no duty on the defendant-manufacturer to design the elevator in a manner to protect against injuries resulting from such conduct; and the plaintiff in exercising care for his own safety was not required to so expose his head and by doing so was grossly negligent.

In the case at bar, the danger inherent in plaintiff's conduct of leaning over the repair platform might have been considered obviously dangerous and grossly negligent had he not taken the precaution, as revealed by his own deposition of warning the cab operator with the admonition "[D]on't you dare move anything." According to the plaintiff's deposition, the operator nodded in response to this admonition. It is not clear, however, whether the nod was indicative of an acknowledgment of the warning or a sign by the operator of his failure to understand the plaintiff's admonition. The deposition of the operator is curiously silent with respect to both the alleged warning and the alleged response. These facts, viewed in a light most favorable to plaintiff, suggest to us that plaintiff's conduct under the circumstances was not indisputably negligent, as was that of plaintiff in *Mulligan.*

We further conclude that there is a genuine issue of material fact, to be determined by the trier of fact, on the issue of plaintiff's contributory negligence, i.e., whether plaintiff acted in the face of obvious danger, thereby barring his right to recovery.

The trial court concluded that defendant's alleged negligent design was not the proximate cause of the accident and plaintiff's resulting injuries. It reasoned rather that the sole proximate cause was the negligence of the crane operator. This finding is premised upon plaintiff's own deposition which reveals that plaintiff warned the operator not to move the trolley and that for some undisclosed reason the warning was not heeded. As noted earlier, the operator's alleged nod is of vague significance. The crane operator was inside

the cab, completely enclosed in glass; therefore, it is reasonable, and more than mere conjecture, to conclude that the operator may have failed to hear or may have misunderstood the command. Such inferences must be viewed in a light most favorable to the plaintiff.

To further support its determination that the alleged defects in design could not have been the proximate cause of the accident, the district court points to the crane operator's deposition and concludes therefrom that the operator negligently failed to look to his left, the direction of the platform from which the plaintiff was working, prior to moving the trolley.

Our reading of Shinneman's deposition leads us to conclude that it is at least disputable whether the operator took the precaution of checking to see if the plaintiff was on the repair platform prior to moving the apparatus. When asked if he had looked to his left, the operator answered "I had looked at the left, but there was nobody in sight."

The operator's deposition regarding the adequacy of the visibility from the cab is less than clairvoyant but at one point when questioned if it was possible for someone to be barred from his view due to the construction of the cab, he stated, "[W]ell, it was probably by that [cab] door being there like it was". Viewing the implications and inferences of the operator's deposition in a light most favorable to the plaintiff, we find his comments suggest it is at least disputable whether or not the cab design permitted the operator that amount of vision necessary to the safe operation of the crane.

In addition, reference is made to the purchase order specifications of Youngstown Sheet and Tube Company[2] and to Indiana statutory prudent safety standards.[3]

This leads us to the conclusion that even if it should be found by the trier of fact that plaintiff warned the operator not to move the trolley and the operator fully understood the import of the admonition, defendant is not necessarily relieved of liability by the failure of the operator to heed plaintiff's precautionary command. If it is further found that the operator, though negligently failing to abide by plaintiff's order, did take the precaution of looking to his left prior to moving the trolley and failed to see the plaintiff on the platform due to the design of the cab, the defendant may be held liable to the plaintiff, notwithstanding the independent intervening negligence of the operator.

The law of Indiana on proximate cause is clear; the causal connection between a defendant's negligence and the plaintiff's injury is not broken by intervening independent forces where those forces should have been reasonably foreseen and expected under the circumstances. New York Central Railroad Company v. Cavinder, Ind.App., 211 N.E.2d 502 (1965). "* * * negligence which produces a condition is regarded as continuous in its operation and as the proximate cause of the injury, if the second [intervening] negligent act could be reasonably anticipated." 21 I.L.E., Negligence, § 67, p. 334.

It follows, therefore, that in our judgment it would not be unreasonable to conclude that reasonable minds might arrive at different conclusions, not only on the issue of whether defendant negligently designed the crane, but also on the question of whether that design proximately caused the occurrence resulting in plaintiff's injuries. The issue of proximate cause, under these circumstances, is for the jury. New York Central Railroad Company v. Cavinder, supra, 211 N.E.2d at 508; Lincoln Operat-

---

2. The Youngstown Sheet and Tube Company purchase order specifications provide that the "[C]ab shall be provided with good clear vision at all times;

* * *". See Specification No. 5067–1, No. 23, Operator's Cab.

3. See 5 Ind.Ann.Stat. § 20–304, Materials-Safeguards (Burns' 1964 Repl.).

ing Co. v. Gillis, 232 Ind. 551, 114 N.E. 2d 873, 875, n. 1 (1953).

We express no opinion on what the evidence in this case may ultimately establish.

The case on summary judgment is close and has not been easy to resolve. For the foregoing reasons, we hold that the learned district court erred in granting summary judgment to defendant. The summary judgment is reversed and the cause is remanded to the district court for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.