766 P.2d 928

**R.A. PECK, INC., Plaintiff–Appellant,**

v.

**LIBERTY FEDERAL SAVINGS BANK, Defendant–Appellee,**

and

**Federal Savings & Loan Insurance Corp., Successor in Interest to Defendant–Appellee.**

**No. 10041.**

Court of Appeals of New Mexico.

Dec. 7, 1988.

F. Joel Roth, Carl Bryant Rogers, Roth, VanAmberg, Gross, Amarant & Rogers, Santa Fe, for plaintiff-appellant.

Robert A. Johnson, Colin L. Adams, Kemp, Smith, Duncan & Hammond, P.C., Albuquerque, for defendant-appellee.

Alicia L. Gutierrez, Moses, Dunn, Beckley, Espinosa & Tuthill, P.C., Albuquerque, Popham, Haik, Schnobrich & Kaufman, Ltd., Denver, Colo., for successor in interest.

## OPINION

APODACA, Judge.

Plaintiff R.A. Peck, Inc. (Third Party) appeals the trial court's dismissal of its second amended complaint for fraud, constructive fraud and negligent misrepresentation against defendant Liberty Federal Savings Bank (the Bank).[1] The basis for the dismissal was twofold: (1) failure to state a claim upon which relief could be granted under SCRA 1986, 1-012(B)(6); and (2) inclusion of a request for specific money damages in violation of SCRA 1986, 1-010(B). In deciding whether the dismissal under Rule 1-012(B)(6) was proper, we must determine under what circumstances, if any, a bank may be held liable to a third party for its failure to disclose information concerning a customer's account and financial condition.

With respect to the first reason for dismissal, we hold that under the facts alleged in the complaint, the Bank had a duty to divulge information concerning the customer's loan accounts and that Third Party's complaint thus stated a claim sufficient to survive a Rule 1-012(B)(6) motion to dismiss. With respect to the second reason for dismissal, without deciding whether inclusion of a damage amount could justify dismissal, we hold that Third Party's civil action preceded the effective date of Rule 1-010(B) and was thus not required to comply with the rule's requirement. We reverse and remand.

A motion to dismiss under Rule 1-012(B)(6) is intended to test only the law of the claims contained in the complaint and not the facts supporting the claims.

---

1. At the time this opinion was ready for filing, the Federal Savings & Loan Insurance Co. filed notice of its substitution for the Bank, and also substitution of counsel. All references in the opinion are to the predecessor in interest, the Bank.

*Roney v. Siri Singh Sahib Harbhajan Singh Yogi,* 103 N.M. 89, 703 P.2d 186 (Ct.App.1985). Such a motion is properly granted only when it appears that a plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim. *Johnson v. Francke,* 105 N.M. 564, 734 P.2d 804 (Ct.App.1987).

In reviewing a trial court's ruling on such a motion, we assume as true all facts that are well pled, and the complaint must be construed in a light most favorable to the party opposing the motion, with all doubts resolved in favor of the sufficiency of the complaint. *Groendyke Transport, Inc. v. New Mexico State Corp. Comm'n,* 85 N.M. 718, 516 P.2d 689 (1973); *Pillsbury v. Blumenthal,* 58 N.M. 422, 272 P.2d 326 (1954). We do not determine whether a plaintiff will ultimately recover, but only whether the complaint states an actionable claim. The facts stated in Third Party's second amended complaint, which for purposes of our review we accept as true, are as follows.

The Bank entered into a $1,300,000 loan construction agreement with Cordova Lodge, Inc. and Lawrence C. Smith (Customer) on October 5, 1984, for construction of the Cordova ski lodge and restaurant at the Rio Costilla ski area. That same day, Customer contracted with Third Party to build the ski lodge and restaurant. The loan agreement restricted use of the funds for payment of, or reimbursement to Customer for interest on the loan, and the payment of financing, labor and material costs in connection with the construction of the lodge and restaurant.

Before commencing construction, Third Party requested and received the Bank's assurance, through its president, Terry Crumby, that the loan for the project had been funded. Based on this assurance, Third Party began construction. The construction enhanced the property the Bank held as mortgage collateral. The Bank had actual knowledge that Third Party was relying on the loan funds for payment of its construction services. When Customer failed to pay Third Party's first two pay requests, Third Party contacted the Bank.

Crumby told Third Party to submit all pay requests directly to the Bank for payment; the Bank paid both requests on December 10, 1984. From December 1984 until March 1985, Third Party and the Bank had numerous conversations in which the Bank repeatedly assured Third Party that the pay requests would be processed and paid. Relying on these assurances, Third Party continued construction and through February 1985, it submitted, and the Bank paid, all pay requests.

Unknown to Third Party, all of the loan funds had been disbursed or obligated by December 18, 1984. In March 1985, Third Party submitted a pay request of $350,000 but was notified by the Bank, through its new president, Eugene Wester, that the loan funds had been exhausted and that no more payments would be made. Third Party ceased construction immediately. Depletion of the account was due to the Bank's disbursement of loan funds to third parties for purposes outside the scope of the loan agreement. Customer, with the Bank's knowledge, also was disbursing loan funds for purposes outside the scope of the loan agreement. Before March 1985, the Bank did not disclose to Third Party that: (1) the Bank and Customer had disbursed loan funds for purposes outside the scope of the loan agreements; (2) all of the loan funds had been effectively disbursed or obligated well before December 18, 1984; or (3) there were any irregularities with the loan account that might lead to problems in payment of Third Party's pay requests.

Initially, we address the propriety of the dismissal under Rule 1–012(B)(6). In its complaint, Third Party alleged it would have ceased construction immediately had the Bank disclosed the above facts in November or December 1984. The trial court, in dismissing the complaint, held that Third Party had failed to allege a duty to disclose, concluding that even if the Bank owed Third Party a duty, the Bank had a fiduciary duty to Customer not to disclose the status of its account. Faced with what it determined to be a task of balancing conflicting interests, the trial court held that the Bank's duty of nondisclosure owed to Customer outweighed any duty of disclo-

sure the Bank may have owed to Third Party.

We first review the elements of Third Party's alleged claims to determine whether Third Party's complaint states a cause of action sufficient to withstand a Rule 1–012(B)(6) dismissal. The bases for Third Party's complaint were fraud and fraudulent or negligent misrepresentation. An action for fraud may be predicated on concealment where there is a duty to disclose. *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash.App. 456, 656 P.2d 1089 (1982). Fraud may arise by omission as well as by commission. *Id.; see* Restatement (Second) of Torts § 551(1) (1977). Thus, where one is under a duty to speak but remains silent and fails to disclose a material fact, he may be liable for fraud. *Everett v. Gilliland*, 47 N.M. 269, 141 P.2d 326 (1943). Constructive fraud consists of "'a breach of a legal or equitable duty, irrespective of the moral guilt of the faultfeasor.'" *Garcia v. Rodney, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 763, 750 P.2d 118, 124 (1988) (quoting *Archuleta v. Kopp*, 90 N.M. 273, 276, 562 P.2d 834, 837 (Ct.App.1977)).

Negligent misrepresentation is an action governed by the general principles of the law of negligence. *Maxey v. Quintana*, 84 N.M. 38, 499 P.2d 356 (Ct.App. 1972). Absent fraud, negligent misrepresentation requires a duty on the part of the person furnishing information; the person receiving the information must have a right to rely on it. *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*

It necessarily follows that a determination of whether the complaint stated a claim upon which relief can be granted will depend on whether a duty of disclosure existed. The disposition of this appeal therefore turns on this question. The posture of the issue presented to us is one of first impression in New Mexico, although a similar question was before us in *Shea v. H.S. Pickrell Co.*, 106 N.M. 683, 748 P.2d 980 (Ct.App.1987). However, the facts of this appeal now require us to address the various elements of the duty of disclosure that were found not to exist in *Shea.*

We begin our task by stating the general rule that a person may be held liable for damages caused by a failure to disclose material facts to the same extent that a person may be liable for damages caused by fraudulent or negligent misrepresentation. *See Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343 (Tenn.App.1986); W. Keeton, *Prosser & Keeton on the Law of Torts* § 106 (5th ed. 1984); 37 Am.Jur.2d, *Fraud & Deceit* § 146 (1968); Restatement, *supra*. Nevertheless, a party can only be held liable for nondisclosure when there was a *duty* to disclose. Equally important is the well-recognized principle in tort law that whether a duty exists is generally a question of law for the trial court to decide. *See Schear v. Board of County Comm'rs*, 101 N.M. 671, 687 P.2d 728 (1984). Once it has been determined that a duty exists as a matter of law, then any claimed breach of that duty presents a question of fact to be resolved by the trier of fact. *Southern Union Gas Co. v. Briner Rust Proofing Co.*, 65 N.M. 32, 331 P.2d 531 (1958).

We believe that Prosser, in discussing duty, has succinctly and aptly described the relative functions of the court and jury:

> This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; *and it must be determined only by the court.* It is no part of the province of a jury to decide whether a manufacturer of goods is under any obligation for the safety of the ultimate consumer, or whether the Long Island Railroad is required to protect Mrs. Palsgraf from fireworks explosions. A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant.

Keeton, *supra*, § 37 at 236 (emphasis added, footnotes omitted).

As noted in *Southern Union Gas Co.*, this statement by Prosser was adopted by the supreme court of Indiana as part of that state's tort law in *Union Traction Co.*

*of Indiana v. Berry,* 188 Ind. 514, 121 N.E. 655, 657 (1919):

> The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and *it is the province of the court to determine whether such a relation is shown as gives rise to such duty.* In determining whether the relation shown gives rise to a duty to use care, *the court decides a pure question of law.* This question cannot be submitted to a jury. (Emphasis added.)

Although *Union Traction Co. of Indiana* dealt with an action in negligence, we believe that its discussion of the concept of duty based on relationships is equally applicable to other tort actions, such as the claims present in this appeal. *See Maxey v. Quintana.*

Yet, where the facts and circumstances of the relationship between the parties are at issue, as they are in this appeal, existence of a duty may become a mixed question of law and fact under which the fact issue must be submitted to the jury for resolution. *See Hooper v. Barnett Bank of West Florida,* 474 So.2d 1253 (Fla.App. 1985). The question of law, on the other hand, must be court-determined by an examination of the facts alleged in the complaint to decide if a plaintiff is entitled to relief under any state of facts provable under the claim. *See Johnson v. Francke.* It follows that if the facts giving rise to the duty, as a matter of law, are successfully rebutted by a defendant, so that there is a failure of proof of the essential facts at trial, a jury, under appropriate instructions, can determine that there was an insufficient showing of facts giving rise to the duty.

■ Generally, in instances where concealment or failure to disclose is alleged, such as in claims of fraudulent or negligent misrepresentation, the relationship existing between the parties that gives rise to the duty falls into three distinct classes:

> "1. Where there is a previous definite fiduciary relation between the parties.

> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.

> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this last class."

*Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.,* 724 S.W.2d at 349 (quoting *Domestic Sewing Machine Co. v. Jackson,* 83 Tenn. 418, 424–25 (1884)). We believe the allegations sufficiently describe a relationship as set out in number 2 above.

■ But when the transaction giving rise to the duty of disclosure specifically involves a bank, other jurisdictions that have been confronted with the problem have considered this duty in light of the countervailing duty of confidentiality the bank may owe its customers. We, too, are mindful that a bank generally has a duty to its customers not to disclose the customers' financial conditions to third parties. *See Hooper v. Barnett Bank of West Florida; Milohnich v. First Nat'l Bank of Miami Springs,* 224 So.2d 759 (Fla.App.1969); *Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 367 P.2d 284 (1961); Annot., *Bank's Duty to Customer or Depositor Not to Disclose Information as to His Financial Condition,* 92 A.L.R.2d 900 (1963).

Because of, or in spite of, the existence of this opposing duty, these courts have developed what we shall term a special "litmus test" to be applied to transactions involving a bank in determining under what circumstances, if any, it may be held liable to a third party for its failure to disclose information in connection with its customers' accounts. Under this particularized test, a court's analysis extends beyond its determination of whether the parties' relationship falls into one or more of the three distinct classes noted previously.

■ Thus, the analysis used in determining existence of the duty becomes a two-part process. Once it has been established that the relationship falls under one or more of the three distinct classes, courts have generally agreed on certain *special circumstances* that may give rise to this

specific duty of disclosure concerning customers' accounts:

(a) One who speaks must say enough to prevent his words from misleading the other party.

(b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party.

(c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

*Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972) (citations omitted). *See also Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.* Other courts have held that a fourth special circumstance may give rise to the duty: a bank may have a duty to disclose financial information concerning a depositor if a bank had actual knowledge that its customer is committing fraud. *See Hooper v. Barnett Bank of West Florida; Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 244 N.W.2d 648 (1976). Having reviewed the allegations contained in Third Party's complaint, we believe they give rise to the special circumstances shown in either (a) or (b) above.

■ We are not unmindful that other jurisdictions, in referring to the opposing duty of nondisclosure a bank owes its customers, have addressed in an interesting way the juxtaposition of these conflicting duties owed to two distinct parties. For example, *Hooper* stated:

[I]n cases such as this, where a fiduciary duty to disclose may arise under the facts and circumstances, the jury is entitled to *weigh* this duty to disclose *against* the bank's duty of confidentiality to its depositors. After a thorough review of the evidence, we find that the jury could have concluded that the bank's duty to disclose or to require disclosure by Hosner *outweighed* its duty to keep Hosner's affairs confidential.

474 So.2d at 1259 (citation omitted, emphasis added).

Likewise, in *Macon County Livestock Mkt., Inc.*, the court said: "The application to banks of the general rule regarding liability for the failure to disclose material facts must be considered *in light of* a bank's generally recognized obligation not to divulge information concerning a depositor's account without the depositor's consent." 724 S.W.2d at 349 (emphasis added). Finally, in *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, the court stated: "[t]he determination of this case is further complicated by the general rule that a bank is under a duty not to disclose the financial condition of its customers." 33 Wash.App. at 459, 656 P.2d at 1092 (citing to *Milohnich v. First Nat'l Bank of Miami Springs* and other cases). Later, at 33 Wash.App. 460, 656 P.2d 1092–93, *Tokarz* continued: "Thus, we must *weigh* the bank's duty not to disclose information about a customer *against* the duty to disclose which may arise under special circumstances." (Emphasis added.)

Although we adopt in New Mexico the law enunciated by these cases with respect to the required relationships between the parties and the "special circumstances" giving rise to the duty of disclosure, we reject their rationale, whether implied or expressed, that courts are somehow required to balance or *weigh* one duty *against* the other or even that one duty must be considered *in light of* the other. The reason we are not inclined to adopt this reasoning is that we consider such balancing or weighing to be unworkable and even somewhat meaningless. This is true whether the existence of the duty is determined as a matter of law by the court, or is left to the jury as a mixed question of law and fact to be determined from the controverted facts of a given case. Instead, we believe that the countervailing duties can exist simultaneously.

Conceivably, a bank may find itself in a situation where under one set of circumstances it may be held liable to a third party for its failure to disclose information about a customer's accounts, or, under different circumstances, find itself, having divulged such information to a third party, liable to its customer for such disclosure. In other instances, a customer, through some action, will be found to have waived

the right to confidentiality, in which case the bank's duty to the customer would be deemed extinguished. We can also conceive of a hybrid situation in which a bank has disclosed some but not all material facts to a third party and thus be held liable for failure to divulge other material facts, while at the same time, be held liable to its customer for disclosing the partial material facts initially. In sum, we believe a bank can be held accountable under a given set of facts to both its customer and the third party. This is not unsimilar to a situation in which an attorney who has taken cases in conflict may be sued by two clients. In such a situation, courts do not balance one duty against the other. Why should banks be treated differently? For this reason, we do not fully comprehend the implications of the caveat enunciated in *Hooper* that a jury or court must weigh or balance one duty against the other.

Simply speaking, we see no reason why the existence of one duty must depend on the nonexistence of the other, and we must instead determine, as a matter of law, whether special circumstances have given rise to the duty of disclosure, without even considering the countervailing duty that may be owed to the bank's customer. The unworkable or meaningless nature of such "balancing" or "weighing" becomes even more obvious when we examine the statement in *Hooper* that the jury there was entitled to weigh the duty of disclosure against the bank's duty of confidentiality owed its customers. It is difficult to conceive by what analytical or mental process a jury will be able to "weigh" one duty against the other, as if determining whether the existence of one simply nullifies the other.

Because of this apparent anomaly, we are forced to conclude that the references by other jurisdictions to a weighing or balancing of duties were simply acknowledgements that courts must begin their analysis with the generally-recognized duty of confidentiality a bank owes its customers. Having done so, we then look to see whether, based first on the relationship between a bank and a third party, there are the "special circumstances" we spoke of earlier that may give rise to a duty of disclosure to the third party, notwithstanding the duty owed to the bank's customer.

■ Applying the "special circumstances" analysis to the facts of this appeal, we conclude the complaint adequately alleged a duty owed by the Bank to Third Party. Specifically, we believe the Bank owed a duty to Third Party to disclose that the loan funds had been exhausted at the same time the Bank was telling Third Party to submit all pay requests directly to it for processing and payment. Implicit in the Bank's statement to Third Party was the assumption that there were, in fact, available loan funds from which Third Party could be paid. Although the Bank may not have had an initial duty to disclose the status of Customer's account, once it affirmatively involved itself, vis-a-vis Third Party, in the capacity other than as a money lender, it had a duty to disclose material facts concerning the account. *See Everett v. Gilliland; Wirth v. Commercial Resources, Inc.*, 96 N.M. 340, 630 P.2d 292 (Ct.App.1981); *Klein v. First Edina Nat'l Bank.* Depletion of account funds, as in this case, constitutes a material fact. This result is all the more compelling because the Bank stood to benefit directly from Third Party's continued construction in the form of enhanced mortgage collateral. As Third Party continued with the construction and improvement of the property, the Bank's financial position, with respect to the collateral, likewise improved. *See Central States Stamping Co. v. Terminal Equip. Co.*, 727 F.2d 1405 (6th Cir.1984).

Our holding does not conflict with *Shea v. H.S. Pickrell Co.* In *Shea*, this court addressed a similar issue: whether a bank has a duty to protect a third party purchaser from the tortious acts of a customer seller. There, the plaintiff applied to the defendant mortgage company for a loan. Plaintiff subsequently qualified, but did not borrow any monies from defendant. After obtaining a mortgage elsewhere and paying the seller, plaintiff discovered the property was subject to a pre-existing construction loan secured by a mortgage held by defendant mortgage company. According-

ly, plaintiff was unable to secure clear title to the property and brought suit against defendant.

The trial court in *Shea* dismissed plaintiff's cause of action for failure to state a claim. In affirming, we noted that, generally, a lender has a duty to disclose facts to a customer-borrower only if a confidential or fiduciary relationship exists between the bank and borrower. We also noted that, in the absence of special circumstances, a lender is generally under a duty not to disclose the financial conditions of its customers.

Likewise, we stated in *Shea* that plaintiff had not alleged that defendant actually loaned plaintiff monies; that there was no confidential or fiduciary relationship between plaintiff and defendant; that defendant actually knew of seller's insolvency; that defendant had actual knowledge seller was engaged in fraudulent activity; or, that defendant's failure to disclose seller's financial condition induced plaintiff to enter into a purchaser agreement with seller. In the absence of those allegations, we concluded that there existed no special circumstances giving rise to a duty to disclose. Such is not the case here.

The Bank argues that imposition of a duty would effectively "hamstring" financial institutions. We disagree. The Bank's involvement in disbursing funds, transferring funds and making assurances regarding available funding in the future well exceeded a "normal lender's" role. Having chosen to thrust itself into the transaction, and placing itself in a position to reap financial benefits by its nondisclosure, it cannot now forego responsibility by cloaking itself under the duty of nondisclosure owed its customers.

Additionally, we believe the Sixth Circuit's statement in *Central States Stamping Co. v. Terminal Equipment Co.*, is relevant to the Bank's contention that a duty to disclose should not be imposed:

The Bank argues that this rule is unworkable and would "dry up" normal communications from banks which are essential to the functioning of the econo-

my. Such a result is not inevitable. In an English case which was similar to ours, *Hedley Byrne & Co., Ltd. v. Heller & Partners, Ltd.*, [1964] A.C. 465, 486, Lord Reid pointed out that a banker who receives an inquiry about the credit-worthiness of a customer has three courses open. The banker can decline to give the information; he can give an answer with a clear qualification' that it is given and accepted without any responsibility or is given without reflection or research; or, the banker can give an answer without qualification. Lord Reid concluded that if a banker adopts the third alternative he can be held to have accepted some responsibility for answering carefully or to have accepted a relationship with the inquirer which requires him to exercise such care as circumstances require.

*Hedley Byrne* was not a fraud case but involved a negligent answer by a banker. However, it dealt instructively with the duty to speak once a relationship is established in which the person questioned knows that the inquirer is relying on the fact that he, the person questioned, has superior information. The duty is particularly clear when the party answering the inquiry benefits directly from the actions of the inquiring party.

727 F.2d at 1409. *See also Ostlund Chemical Co. v. Norwest Bank of Jamestown,* 417 N.W.2d 833 (N.D.1988).

We believe it is precisely the existence of the three choices cited by Lord Reid that precipitates examination of the "special circumstances" relied on by other jurisdictions to impose a duty of disclosure. Having chosen to speak when it did not have to, a bank should not complain of a duty being imposed under certain circumstances, especially when it stands to reap the benefits by its decision to stay mute.

In our holding, we are not proposing a rigid rule that would always require a bank to disclose to a third party the financial condition of its customers each time it deals with that third party in any transaction. Generally, a bank-depositor relationship, which is treated as a debtor-creditor rela-

tionship, does not ordinarily impose a duty of disclosure upon a bank. *See* Annot., *Existence of Fiduciary Relationship Between Bank & Depositor or Customer so as to Impose Special Duty of Disclosure Upon Bank,* 70 A.L.R.3d 1344 (1976). What we do propose, however, is that if a bank, having the option to remain silent and to decline to offer any information to the third party, instead chooses the third alternative proposed by Lord Reid in *Hedley Byrne,* the bank will be wise to heed his cautionary words that it be prepared to accept responsibility for having withheld material facts that may prove detrimental to the third party.

 We now turn to the second reason for the trial court's dismissal of the complaint: inclusion of a request for specific money damages in violation of Rule 1–010(B). Third Party filed its original complaint on May 13, 1986. The complaint requested $1,796,000 plus interest in compensatory and consequential damages and $5,000,000 plus interest in punitive damages. Third Party's first amended complaint was filed on May 15, 1986. That complaint requested $1,850,000 plus interest in compensatory and consequential damages and $5,000,000 plus interest in punitive damages. Pursuant to the trial court's order granting Third Party's motion to amend, the second amended complaint was filed on March 5, 1987. It asked for specific money damages. The trial court granted the Bank's motion to dismiss Third Party's second amended complaint for failure to comply with Rule 1–010(B).

Rule 1–010(B) provides: "Except in those cases which sound in contract or are based upon a written instrument or agreement, the district court clerk shall not accept for filing any complaints which contain an allegation for damages in any specific monetary amount." Pursuant to the supreme court's order dated September 16, 1986, Rule 1–010(B) was effective for cases filed on or after January 1, 1987.

A civil action is commenced by filing a complaint with the court. SCRA 1986, 1–003; *Hughes v. Joe G. Maloof & Co.,* 84 N.M. 516, 505 P.2d 859 (Ct.App.1973). The present case was commenced on May 13, 1986, the date the original complaint was filed. Therefore, pursuant to the supreme court's order of September 16, 1986, Third Party's second amended complaint should not have been dismissed for requesting damages in a specific monetary amount. The parties agree that dismissal with prejudice for noncompliance with this rule was error.

We reverse the trial court's dismissal of the complaint and remand the case for reinstatement in the trial court's docket and for further proceedings consistent with this opinion. Third Party is awarded costs.

IT IS SO ORDERED.

BIVINS and ALARID, JJ., concur.