# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-020**

**Filing Date: February 11, 2021**

**No. A-1-CA-37113**

**NM-EMERALD, LLC,**

      Plaintiff-Appellant,

v.

**INTERSTATE DEVELOPMENT, LLC
and TERRY CORLIS,**

      Defendants-Appellees,

and

**CENTRAL MUTUAL INSURANCE
COMPANY,**

      Defendant,

and

**INTERSTATE DEVELOPMENT, LLC;
TERRY CORLIS; and BK SALES, INC.,**

      Cross-Plaintiffs,

v.

**INTERSTATE DEVELOPMENT, LLC;
BFI PLUMBING & HEATING; CJL
ENGINEERS, INC.; FOX ELECTRIC
LTD. CO.; KLEE ARCHITECTS AND
ENGINEERS, INC.; and SMITH & SONS
MECHANICAL, LLC,**

      Cross-Defendants,

and

**CENTRAL MUTUAL INSURANCE
COMPANY,**

Third-Party Plaintiff,

v.

**NM-EMERALD, LLC; INTERSTATE DEVELOPMENT, LLC; JOHN KLEE; and TERRY CORLIS,**

Third-Party Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Released for Publication June 29, 2021.

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
R.E. Thompson
Emil J. Kiehne
Mia K. Lardy
Albuquerque, NM

Polsinelli Shughart PC
Jonathan G. Brinson
Phoenix, AZ

for Appellant

Allen, Shepherd, Lewis & Syra, P.A.
E.W. Shepherd
Tiffany A. Owens
Albuquerque, NM

for Appellees

## OPINION

**HANISEE, Chief Judge.**

**{1}** Plaintiff NM-Emerald, LLC, appeals the district court's order granting summary judgment and dismissing its claim for negligence against Defendants Interstate Development, LLC, and Terry Corlis for defects to a property constructed by Defendants and purchased through foreclosure by Plaintiff, based on the economic loss rule. On appeal, Plaintiff contends that the economic loss rule does not apply to bar its claim because (1) based on the language in the contract between the parties, both parties agreed that tort remedies would be available to Plaintiff; and (2) tort remedies were available to Plaintiff as a subsequent purchaser of the property. Though we conclude the parties have failed to demonstrate that the economic loss rule is applicable in this

case, we nevertheless affirm on the basis that Plaintiff does not qualify as a subsequent purchaser within the meaning contemplated in *Steinberg v. Coda Roberson Construction Co.*, 1968-NMSC-055, ¶ 6, 79 N.M. 123, 440 P.2d 798.

**BACKGROUND**

**{2}** IMH Secured Loan Fund, LLC, (IMH) and Interstate Development, LLC, (Interstate) entered into a construction loan agreement (the Construction Contract) whereby IMH loaned over $4 million to Interstate for construction of a three-story office building (the Property). Interstate, as both owner and general contractor for the project, and Terry Corlis, as a principal, engaged various subcontractors to perform work on the Property. The Construction Contract outlines the responsibilities and remedies available to both parties. In particular, Interstate had a duty to build the Property in a good and workmanlike manner and to correct any defects in the construction. IMH was allowed, but not required, to inspect the work done by Interstate at any time. Interstate's failure to abide by the provisions of the Construction Contract, including any failure to construct the Property in a good and workmanlike manner or fix any construction defects, constituted default under the Construction Contract. In the event of default, IMH had the option to "enter into possession of the Property" and "perform all work necessary to complete the construction." In such a circumstance, Interstate would be obligated to "pay to [IMH] on demand any amount expended by [IMH] in such performance or attempted performance, together with interest thereon." The Construction Contract also stated that IMH:

> shall have all of the [r]ights granted in the [l]oan [d]ocuments or otherwise and *all of those available at law or in equity*, and these same [r]ights shall be cumulative and may be pursued separately, successively or concurrently against [Interstate], Guarantor or any property covered under the [l]oan [d]ocuments at the sole discretion of [IMH].

(Emphasis added.) In addition, Section 6.01 of the Construction Contract states "[s]hould a Default occur and be continuing, . . . [IMH] may, at its election, do any one or more of the following: . . . Exercise any and all [r]ights afforded by any of the [l]oan [d]ocuments, *or by law or equity or otherwise*, as [IMH] shall deem appropriate." (Emphasis added.) The parties further agreed that the Construction Contract was to be governed by New Mexico law.

**{3}** Interstate stopped payment and defaulted on the loan associated with the Construction Contract approximately a year and a half after the loan's inception and, as a result, IMH filed a foreclosure lawsuit. IMH did not complete the foreclosure, and instead, gave Interstate time to cure its default. IMH eventually assigned its interest in the Construction Contract to Plaintiff, a single-asset entity specifically created by IMH to permit the Property to be held by Plaintiff. Thereafter, the foreclosure was completed, and Plaintiff purchased the Property at the foreclosure sale. Plaintiff did not inspect the Property until after it was purchased through foreclosure. After inspecting the Property, Plaintiff discovered numerous, significant construction defects. Plaintiff alleges it

incurred over $615,000 in repair costs to repair the defects and lost approximately $913,132 in lost rents. Plaintiff filed suit against Defendants in negligence for the construction defects, alleging that Defendants breached their duty to Plaintiff by "(1) negligently choosing a subcontractor that caused structural and other defects to the Property; (2) failing to properly supervise its subcontractor's work on the Property; and/or (3) failing to properly inspect construction of the Property."

{4}    Defendants filed a motion for summary judgment seeking dismissal of Plaintiff's negligence claims, arguing that (1) the construction defects alleged by Plaintiff were patent defects, and a subsequent purchaser's remedies against a contractor for negligence exist only for latent defects; and (2) Plaintiff's tort claims were barred by the economic loss rule, which in circumstances applicable precludes recovery of economic loss damages in tort, rather than contract, causes of action. In response, Plaintiff argued that (1) Defendants' latent-defect argument fails because New Mexico does not limit recovery to latent defects; (2) the economic loss rule does not apply because Defendants owed Plaintiff an independent duty of care as a subsequent purchaser, and the rule was not meant to apply to construction damages suffered by subsequent purchasers.

{5}    The district court held a hearing and heard argument from the parties on the motion for summary judgment. During the hearing, the district court judge rejected Defendants' latent defect argument, but stated that "recovery could be barred . . . based on the [e]conomic [l]oss [r]ule" and sought argument on the rule's applicability. After the hearing, the district court entered an order granting Defendants' motion for summary judgment, dismissing all of Plaintiff's claims against Defendants based on the economic loss rule.

{6}    Plaintiff moved to reconsider, arguing that the economic loss rule did not apply because the parties stated in the Construction Contract that Plaintiff was not limited to contractual remedies, alternatively seeking certification of the order granting summary judgment for immediate appeal. In denying Plaintiff's motion to reconsider, the district court stated that "[t]he economic loss rule is not a matter of waiving or preserving tort remedies. Rather, it is a doctrine of law that prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." The district court then entered an order directing entry of final judgment against Plaintiff, concluding that the order granting summary judgment was final and that there was no just reason for delay under Rule 1-054(B) NMRA.

## DISCUSSION

{7}    On appeal, Plaintiff contends that Defendants' motion for summary judgment was improperly granted because (1) the parties agreed in the Construction Contract that tort remedies would be available to the lender; (2) the economic loss rule does not bar Plaintiff's negligence claims as Defendants owed Plaintiff a separate duty of care as a

subsequent purchaser; and (3) Defendants' argument that the construction defects were patent defects provides no alternative basis for affirmance.[1]

## I.      Standard of Review

**{8}**      "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "We review issues of law de novo." *Id.* Plaintiff is not contending a genuine issue of material fact exists. Accordingly, "if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

## II.      Economic Loss Rule

**{9}**      New Mexico adopted the economic loss rule in 1989 in *Utah International, Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, ¶ 7, 108 N.M. 539, 775 P.2d 741, a case where a purchaser of a coal-hauler sued the manufacturer after the hauler caught fire during normal use and destroyed itself. There, we held, "in commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses *from injury of a product to itself* are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." *Id.* ¶ 17 (emphasis added) (citation omitted). In the three decades since, application of the rule by New Mexico courts has occurred only in the context of strict products liability cases. *See, e.g.*, *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 20, 123 N.M. 170, 936 P.2d 852 (reaffirming *Utah International* and holding that the plaintiffs could not recover in strict products liability for any injury of the product to itself, or any interruption of business attributed to the injury to the product); *see also Amrep Sw., Inc. v. Shollenbarger Wood Treating, Inc.*, 1995-NMSC-020, ¶¶ 25, 31, 119 N.M. 542, 893 P.2d 438 (holding that "the economic[]loss rule does not bar a claim for indemnification" and declining to address the validity of the trial court's underlying dismissal of the plaintiff's negligence and strict liability claims based on the economic loss rule because the plaintiff did not appeal that dismissal).

**{10}**      Although the parties in this case assume that the economic loss rule also applies to construction defect cases,[2] they have neither acknowledged nor briefed the matter as

---

[1]Defendants argued in the district court that the asserted defects were patent defects that could have been discovered through a reasonable inspection and that by purchasing the Property at a foreclosure sale without conducting an inspection, Plaintiff essentially waived its negligence claims. Because we disagree with Plaintiff's first two arguments and affirm the district court on these bases, we need not address Plaintiff's third argument in response to Defendants' alternative basis for affirmance.

[2]Plaintiff disputes application of the economic loss rule on other grounds; namely, that the parties contractually agreed to the availability of tort remedies. Neither party argued, nor did the district court discuss or conclude, that the rule was limited to strict product liability cases and was therefore inapplicable here.

an issue of first impression in New Mexico.[3] We are not bound by their interpretation or agreement. *Tucson Elec. Power Co. v. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 10, 456 P.3d 1085 (stating that "while we generally look to parties' stipulations with favor, we are not bound by parties' stipulations [or concessions] as to applicable law, because we must conduct our own analysis; and we also will not enforce stipulations if they are unreasonable, against good morals or sound public policy" (alterations, omissions, internal quotation marks, and citations omitted)).

**{11}** We observe that courts have taken divergent approaches to determining whether and when the economic loss rule applies to bar recovery for economic losses in tort, and our own research reveals that at least one state, Florida, has "h[eld] that the economic loss rule applies only in the products liability context." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013) (reviewing the origin and purpose of the economic loss rule and receding from "what has been described as the unprincipled extension of the rule"); *see* Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 527-28 (2009) (noting that although courts generally agree about the rule's application in products liability cases, there is substantial variation among states as applied to other contracts between the parties or other areas of tort law). While the Restatement (Third) of Torts: Liability for Economic Harm § 3 (2020) indicates that a majority of courts apply the economic loss rule any time parties have a contract such that "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties[,]" Professor Johnson notes there are "numerous competing formulations" and no agreement for how to apply the rule. Johnson, *surpa*, at 526. The out-of-state authority cited by the parties amply demonstrates this point. *Compare S K Peightal Eng'rs, LTD v. Mid Valley Real Est. Sols. V, LLC*, 2015 CO 7, ¶ 7 (stating that the application of the economic loss rule "focuses on the source of the duty that the defendant allegedly breached" and that if "the duty breached arises *independently* of any contract duties between the parties, then a tort action premised on that breach remains viable" (internal quotation marks and citation omitted)), *with Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 P.3d 664, 669, 672 (Ariz. 2010) (en banc) (noting that "it is often difficult to draw bright lines between obligations imposed by law and those arising from contract" and stating that "[t]he economic loss doctrine may vary in its application depending on context-specific policy considerations").

**{12}** Consequently, the question is not only whether to expand the application of the economic loss rule, but also how our courts would apply the rule in light of its multiple variations and exceptions. The parties have offered no argument on these points, and to rule on these questions would thus require this Court "to develop the arguments itself, effectively performing the parties' work for them." *Elane Photography, LLC v. Willock*,

---

[3]We are aware that the United States District Court for the District of New Mexico has interpreted New Mexico precedent to indicate that "the economic loss rule applies to both contracts for goods as well as contracts for services." *Farmers All. Mut. Ins. Co. v. Naylor*, 480 F. Supp. 2d 1287, 1289 (D.N.M. 2007). However, neither this nor our New Mexico Supreme Court has extended application of the economic loss rule in such a manner, and we "emphasize that federal precedent does not necessarily control our analysis of state law[.]" *Cal. First Bank v. State*, 1990-NMSC-106, ¶ 34, 111 N.M. 64, 801 P.2d 846.

2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them."). This we will not do, as it "creates a strain on judicial resources and a substantial risk of error," particularly on a question that has the potential to significantly impact contractual relationships in New Mexico. *Id.*

**{13}** Because we decline to expand and apply the economic loss rule in this case, we need not consider whether the parties' contract waived the application of the rule.

### III. Subsequent Purchaser

**{14}** Our holding regarding the economic loss rule does not conclude our evaluation of whether summary judgment was properly granted on Plaintiff's negligence claim, however. From the inception of this lawsuit, Plaintiff has argued that its right to damages for Defendants' negligent construction does not arise from the Construction Contract at all, but instead, through its status as a subsequent purchaser of the property. Plaintiff's complaint asserted that as a subsequent purchaser, Defendants owed Plaintiff an independent duty of care under *Steinberg*, 1968-NMSC-055, ¶ 6. The parties' arguments on this point in the district court centered on whether Plaintiff, as a wholly owned subsidiary of IMH, can properly be considered a subsequent purchaser. For the reasons that follow, we conclude the district court correctly determined that no independent tort duty was owed to Plaintiff here.

**{15}** "New Mexico courts have long held that duty is a matter of law to be determined by the court." *Lopez v. Devon Energy Prod. Co., L.P.*, 2020-NMCA-033, ¶ 16, 468 P.3d 887, *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-38161, Apr. 28, 2020). In *Steinberg*, our Supreme Court established that a contractor owed an independent duty to subsequent home buyers to exercise care in the construction of the home. 1968-NMSC-055, ¶¶ 6, 9, 10. The plaintiffs in *Steinberg* were the second couple to purchase a home constructed by the defendant builder. *Id.* ¶ 2. When the plaintiffs purchased the home, the former owners gave the plaintiffs a booklet that contained a page stating "Roof—10 years" directly under "GUARANTEES." *Id.* Within ten years of the initial sale of the home, the roof began to leak and the plaintiffs contacted the defendant, who took no action. *Id.* ¶ 3. The defendant argued that it was not liable for negligence "to a purchaser not in privity with the manufacturer." *Id.* ¶ 4. The Court denied the defendant's argument, and held that:

> in a tort action for negligence against a manufacturer, or supplier, whether or not privity exists is wholly immaterial. The question of liability should be approached from the standpoint of the standard of care to be exercised by the reasonably prudent person in the shoes of the defendant manufacturer or supplier.

*Id.* ¶ 6 (internal quotation marks and citation omitted). The Court reasoned that the plaintiffs were owed a duty of care because they were members of the class of prospective homebuyers for whom the defendant built the house and "as a matter of

legal effect the home may be considered to have been intended for the plaintiffs[.]" *Id.* ¶ 9 (internal quotation marks and citation omitted).

**{16}**     Applying the principles in *Steinberg*, we reach a different conclusion. Plaintiff is not owed a separate duty of care because unlike the plaintiffs in *Steinberg*, Plaintiff here is not a member of the class of prospective home buyers our Supreme Court held was owed such a duty. In *Steinberg*, and the two California cases relied upon by the Court in *Steinberg*, the plaintiffs were homebuyers in the traditional sense—public purchasers. *Id.* ¶¶ 2-3, 8-9. There is no indication in *Steinberg* that a commercial entity with equal bargaining power to the builder and in privity with the builder through a construction loan contract, qualifies as a subsequent purchaser, as contemplated by the Court, simply because the commercial buyer purchased the property through foreclosure.

**{17}**     Plaintiff further argues that because anyone could have purchased the Property at the foreclosure sale, under the district court's reasoning, Defendants are not liable for their negligence because of the fortuity that Plaintiff purchased the Property; although if anyone else had outbid Plaintiff, that subsequent purchaser would be entitled to maintain a negligence action against Defendants. Acknowledging that there is no New Mexico case law on the question, Plaintiff asserts other jurisdictions have recognized that allowing a builder to escape the consequences of its negligence, merely because its negligence was discovered by the lender acting in its capacity as a subsequent purchaser, makes no sense.

**{18}**     In support of its position, Plaintiff cites *Sumitomo Bank of California v. Taurus Developers, Inc.*, 229 Cal. Rptr. 719, 728 (Cal. Ct. App. 1986), for its holding prohibiting the defendant builder from escaping the consequences of its negligent actions merely because the plaintiff purchaser of a defective property was also the lender. In *Sumitomo*, the plaintiff loaned the defendant funds, secured by a trust deed, for the defendant to construct a condominium building. *Id.* at 720. The plaintiff "could enter the property at all times and take appropriate actions if construction did not conform with specifications, but this right did not relieve [the defendant] of its duty to inspect the construction" and notify the plaintiff of any defects. *Id.* at 720-21. The defendant defaulted on its payments and the plaintiff "exercised its power of sale and purchased the property for a bid equal to the amount of the outstanding indebtedness at the trustee's sale." *Id.* at 721. After discovering latent construction defects following the sale, the plaintiff sued under various theories, including negligence. *Id.* The court held that the plaintiff's claim for negligence was not barred because "[n]egligent construction principles rest on a policy determination that purchasers of homes should not be harmed by defective housing caused by the breach of a duty to construct properly[,]" and "such harm is foreseeable when housing projects are built for eventual sale[.]" *Id.* at 727. The court reasoned that "[l]iability for negligence should not depend upon the randomness in selection of the party who purchases an item when placed in the market[,]" and "the fact [that] it is the lender who purchases and not a third party, is fortuitous." *Id.* at 727-28.

**{19}** Defendants, on the other hand, rely on *S K Peightal*, 2015 CO 7, ¶ 8, a factually similar case where the Colorado Supreme Court was tasked with determining whether "a third-party beneficiary of [a d]eed-[i]n-[l]ieu, which is simply a modification of the [c]onstruction [l]oan [c]ontract that facilitated the development of the home at issue—can be properly considered a 'subsequent purchaser.' " In that case, a developer entered into intertwined construction loan agreements with a bank and a general contractor to construct a "spec" home to be sold on the open market. *Id.* ¶¶ 2-3. Once constructed, the home "sat unsold until the [c]onstruction [l]oan [c]ontract matured and came due[.]" *Id.* ¶ 3. The developer and a wholly owned subsidiary created by the bank (the subsidiary) then entered into a contract titled "[a]greement for [d]eed-in-[l]ieu of [f]oreclosure," which released the developer from liability and provided the bank with the deed to the house "and a lump-sum payment of the difference between the home's appraised value and the remaining indebtedness due on the [c]onstruction [l]oan [c]ontract." *Id.* After the subsidiary took possession of the home, "large cracks formed in the walls of the home as a result of settling soil beneath the home's foundation." *Id.* ¶ 4. The subsidiary sued the soil engineering corporations who subcontracted with the developer (the subcontractors) for "purely economic damages under a negligence theory for breaching their duties and applicable standard of care in providing soils and other engineering services and/or design services for the [h]ome." *Id.* (alteration, omission, and internal quotation marks omitted).

**{20}** On certiorari, the Colorado Supreme Court held that the subsidiary, as a third-party beneficiary under the deed-in-lieu, was not a subsequent homeowner owed an independent duty of care. *Id.* ¶ 24. The court explained that Colorado "recognized that construction professionals owe an independent duty to act non-negligently in the construction of a home, but . . . limited this duty so as to allow only *subsequent* home owners to maintain an action against a builder." *Id.* ¶ 23 (alteration, internal quotation marks, and citation omitted). However, the court stated that unlike a situation where the plaintiffs

> had their complaint originally dismissed for lack of privity and lacked alternate legal avenues to enforce their rights, [the subsidiary] here may enforce the [d]eed-in-[l]ieu as a third-party beneficiary thereof, and the [d]eed-in-[l]ieu preserves [the bank's] enforcement rights against [the developer] from the [c]onstruction [l]oan [c]ontract, which was the very contract that facilitated the construction of the home.

*Id.* ¶ 24 The court accordingly concluded, "[t]herefore, as a third-party beneficiary of a commercial entity that negotiated at arm's length a [c]onstruction [l]oan [c]ontract outlining the parties' duties and liabilities during the construction of a home, [the subsidiary] does not qualify as a subsequent homeowner . . . and is not a member of the class to which this special independent duty is owed." *Id.*

**{21}** Due to the factual similarities between this case and *S K Peightal*, we are persuaded by and apply the rationale in *S K Peightal*. Plaintiff in this case was assigned the Construction Contract by IMH as a single-asset entity created specifically to take

control over the Property. This is similar to the status of the third-party beneficiary of the contract in *S K Peightal*, a subsidiary wholly owned by the original lender and assignor; both parties were closely connected to the original lender and were assigned the previous lenders' rights under the construction contract. While the third-party beneficiary in *S K Peightal* received ownership of the property through a deed-in-lieu of foreclosure, whereas Plaintiff here obtained ownership of the Property through a foreclosure sale, each acquired contractual remedies available against the defaulting party. Plaintiff attempts to distinguish itself from the third-party beneficiary in *S K Peightal*, asserting that because Plaintiff purchased the Property at a foreclosure sale, it "no longer had a contractual route by which it could obtain relief against Defendants," whereas the third-party beneficiary still had "contractually enforceable rights" under the deed-in-lieu, but we are unpersuaded. *See id.* ¶ 23.

**{22}** Plaintiff failed to put forth any evidence showing that, because it obtained ownership via the foreclosure sale, it was precluded from pursuing additional contractual remedies pursuant to its assignment of the Construction Contract from IMH. *See Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 29, 294 P.3d 1276 ("A party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact once a prima facie showing is made by movant." (internal quotation marks and citation omitted)). Regardless of what remedies are still available to Plaintiff under the Construction Contract to seek economic damages, Plaintiff had contractual rights and remedies available to it, which it chose not to exercise. This fact differentiates Plaintiff from other subsequent purchasers not in privity with the builder and therefore without contractual remedies to rely upon to seek relief.

**{23}** Unlike the *S K Peightal* plaintiffs, Plaintiff here was assigned the rights and responsibilities of the Construction Contract from IMH, "a commercial entity that negotiated at arm's length," and entered into a contract "outlining the parties' duties and liabilities during the construction of [the Property]." 2015 CO 7, ¶ 24. To reiterate, Plaintiff thereby acquired those contractual remedies provided by the Construction Contract that it chose not to pursue, including entering the Property and performing any work that was needed to complete construction, obligating Defendants to pay for the work performed. Consequently, we hold that Plaintiff is not a subsequent purchaser to which a special duty is owed.

**{24}** Additionally, we are not persuaded that *Sumitomo* is sufficiently similar to the present case to warrant our reliance upon its holding. While *Sumitomo* cogently expresses concern that "[l]iability for negligence should not depend upon the randomness in selection of the party who purchases an item when placed in the market," 229 Cal. Rptr. at 727-28, that concept alone is not inconsistent with our settled policy rationale recognizing the historic distinction between contract and tort law. *Kreischer v. Armijo*, 1994-NMCA-118, ¶ 6, 118 N.M. 671, 884 P.2d 827 ("Courts have long followed the rule that the difference between a tort and a contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law." (alteration, internal

quotation marks, and citation omitted)). Plaintiff effectively stands in the shoes of the original lender and the parties' duties and remedies are provided in the Construction Contract, a document within the contemplation and control of the parties. *See id.* ("The obligation to properly construct the house . . . was created by the contract and was not an obligation imposed by law. The mere titling of the cause of action as one for gross negligence did not change its nature."). Plaintiff has not shown that the tort duties it claims were breached here—the duty to retain, supervise, and inspect the work of subcontractors—are independent of the contractual duties to construct the building in a good and workmanlike manner and to correct any defects.

**{25}**  In accordance with the important policy considerations discussed above, we seek to preserve the integrity of a contract entered into by parties with equal bargaining power. By refusing to determine that Plaintiff is owed an independent duty as a subsequent purchaser, we are preventing Plaintiff from "us[ing] tort law to alter or avoid the bargain struck in the contract." *Amrep Sw., Inc.*, 1995-NMSC-020, ¶ 28. In order to avoid subsuming contract law with negligence, we determine that Plaintiff is not owed an independent duty as a subsequent purchaser and is limited to the contractual remedies bargained for in the Construction Contract. Therefore, we hold that Plaintiff's negligence claims against Defendants fail as a matter of law because no independent tort duty was owed to Plaintiff here.

**CONCLUSION**

**{26}**  For the foregoing reasons, we affirm the district court's order granting Defendants' motion for summary judgment.

**{27}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**