This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39286**

**EDDIE GUTIERREZ, an individual;
PERFORMANCE TOOL AND EQUIPMENT,
INC., a New Mexico corporation; and SAMABE,
CORP., a New Mexico corporation,**

       Plaintiffs-Appellants,

v.

**BEN PADILLA, an individual; JOHN LASTRA,
individually and as a licensed New Mexico agent;
and NEW MEXICO REAL ESTATE ADVISORS,
INC. d/b/a COLLIERS INTERNATIONAL, a New
Mexico corporation,**

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Joshua A. Allison, District Court Judge**

Business Law Southwest LLC
Donald F. Kochersberger III
Alicia M. McConnell
Albuquerque, NM

Tal Young, P.C.
Steven Tal Young
Albuquerque, NM

for Appellants

Moses, Dunn, Farmer & Tuthill, P.C.
Joseph L. Werntz
Albuquerque, NM

for Appellee Ben Padilla

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer A. Noya
Elizabeth A. Martinez
Sonya R. Burke
Albuquerque, NM

for Appellee John Lastra

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** This appeal arises from the sale of two automotive supply businesses. Plaintiffs Eddie Gutierrez and Samabe Corporation bought two businesses owned by Defendant Ben Padilla, Performance Tool and Equipment, Inc. (PTE), and Performance Equipment of El Paso, Inc. (collectively, the Performance Companies). In district court, Plaintiffs alleged that Padilla and the listing broker, Defendant John Lastra, made misrepresentations about the condition of the Performance Companies during the sale and breached various terms of the sale contract. Padilla counterclaimed, alleging Plaintiffs had breached a portion of the contract concerning how the proceeds of the sale of used inventory would be handled after Plaintiffs took over. After a bench trial, the district court awarded damages to both Plaintiffs and Padilla on their respective claims for breach of contract.

**{2}** Plaintiffs appeal and argue that the district court erred by (1) granting summary judgment in favor of Lastra on Plaintiffs' Unfair Practices Act claim, (2) granting summary judgment in favor of Lastra on Plaintiffs' negligent misrepresentation claim, (3) dismissing Plaintiffs' tort claims against Padilla as barred by the economic loss doctrine, (4) dismissing Plaintiffs' claim for damages for potential tax liability resulting from PTE's 2014 tax return, (5) concluding that Plaintiffs breached the parties' inventory agreement, and (6) concluding that Padilla did not breach the contract. We affirm.

**BACKGROUND**

**{3}** Padilla was the sole shareholder and president of the Performance Companies. In 2015, Padilla hired Lastra as his listing broker to list the Performance Companies for sale. Lastra wrote an Initial Offering Profile (IOP) for the businesses, which contained an overview of the Performance Companies, their product lines, and their profitability. Around that same time, Plaintiff Gutierrez was looking to purchase a business and contacted Lastra seeking information about businesses for sale. After signing a confidentiality agreement, Lastra gave Plaintiff Gutierrez propriety information about the Performance Companies.

**{4}** Plaintiff Gutierrez signed a first letter of intent in April of 2015 for the purchase of the Performance Companies. This started a due diligence period where Plaintiffs had access to all financial records and customer lists of the Performance Companies.

However, Plaintiffs were unable to secure financing for the purchase and terminated the letter of intent in June of 2015.

{5}     Plaintiff Gutierrez signed a second letter of intent for the purchase of the Performance Companies in November of 2015. Afterward, Plaintiffs continued to have access to financial and customer information for the Performance Companies. On January 8, 2016, the parties signed a stock purchase agreement (SPA), which set out the terms of the sale. After the sale was complete, the businesses struggled, suffering a decline in sales and service income, losing key employees, and losing the supplier of the most profitable equipment line.

{6}     Two years after executing the SPA, Plaintiffs filed suit against both Lastra and Padilla. Plaintiffs' claims were largely based on alleged misrepresentations that occurred leading up to their purchase of the Performance Companies.

**I.      Claims Against Lastra**

{7}     Plaintiffs asserted ten claims against Lastra. In lieu of filing an answer, Lastra filed a Rule 1-012(B)(6) NMRA motion to dismiss all of Plaintiffs' claims. The district court granted the motion as to five of the claims but allowed five others to continue: unjust enrichment, negligence, professional negligence, negligent misrepresentation, and violation of the Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019), though the court narrowed the UPA cause of action to only those claims arising under Section 57-12-2(D)(14).

{8}     Lastra later moved for summary judgment on the five remaining claims. The district court granted summary judgment on all but one: Plaintiffs' claim for negligent misrepresentation, which alleged that Lastra had made misrepresentations in the IOP at the time it was provided to Plaintiffs. During trial, at the close of Plaintiffs' case in chief, Lastra moved for dismissal of the remaining negligent misrepresentation claim. The district court granted the motion in a letter ruling, which was incorporated in the final findings of fact and conclusions of law.

**II.     Claims Against Padilla**

{9}     Plaintiffs asserted fifteen claims against Padilla. Through the course of three summary judgment motions, the district court granted summary judgment in favor of Padilla on Plaintiffs' UPA claim, dismissed Plaintiffs' claims for business interruption, loss of opportunity, accounting, and punitive damages as standalone claims, and dismissed Plaintiffs' tort claims as barred by the economic loss doctrine.

{10}    Plaintiffs and Padilla went to trial on Plaintiffs' claims for breach of contract, breach of the covenant of good faith and fair dealing, and contractual indemnity, and on Padilla's counterclaim for breach of contract. Following a six-day bench trial, the district court issued detailed findings and conclusions. The court concluded that Padilla had breached the SPA by receiving money for products and services sold or performed

before the closing date but not billed until after the closing date, and awarded Plaintiffs damages in the amount of $149,798 on that claim. On Padilla's counterclaim, the court determined that Plaintiffs owed Padilla money for new inventory, for used inventory sold after the closing, and for sales and services completed before the closing but reconciled after the closing. The court awarded Padilla damages in the amount of $137,075.01. Therefore, in the final calculation, the district court determined that Padilla owed Plaintiffs $12,722.99. The district court deemed Padilla the prevailing party and awarded him attorney fees and costs.

**{11}** Plaintiffs timely appealed to this Court.

**DISCUSSION**

**I.      Claims Involving Lastra**

**A.      Unfair Practices Act**

**{12}** We first address Plaintiffs' argument that the district court erred in granting summary judgment in favor of Lastra on Plaintiffs' UPA claim. Plaintiffs' UPA claim was grounded in the theory that Lastra made several misrepresentations about the condition of the Performance Companies in the IOP. Lastra argued the UPA claim failed as a matter of law because the UPA only applies to the sale of goods or services, and any alleged misrepresentations in the IOP were made in connection with the sale of a business, which is not a good or service under the UPA. The district court agreed and granted summary judgment after concluding that the UPA "is not applicable to the stock purchase transaction that is the subject of this action."

**{13}** On appeal, Plaintiffs argue that their UPA claim was based on Lastra's provision of brokerage services, not the sale of the business. Lastra responds that (1) he did not actually provide services to Plaintiffs, and (2) the district court made findings of fact after trial that preclude Plaintiffs' claim as a matter of law. We decide this issue on the grounds proposed by Lastra's second argument. *See Bd. of Cnty. Comm'rs of Cnty. of Bernalillo v. Chavez*, 2008-NMCA-028, ¶ 12, 143 N.M. 543, 178 P.3d 828 (providing that "an appellate court will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant" and "the reviewing court is not limited to the district court's reasoning in affirming a grant of summary judgment" (internal quotation marks and citation omitted)).

**{14}** This Court reviews the grant of summary judgment de novo. *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243. "Summary judgment is appropriate in the absence of any genuine issue of material fact and where the movant is entitled to judgment as a matter of law." *Id.* When reviewing a grant of summary judgment, "we examine the whole record for any evidence that places a genuine issue of material fact in dispute, and we view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits." *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879

(internal quotation marks and citation omitted). In this case, the record contains findings and conclusions following a bench trial that bear on the elements of Plaintiffs' UPA claim. To the extent those findings are unchallenged, they are binding on appeal. *Seipert v. Johnson,* 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298.

**{15}** To prove a UPA violation, a plaintiff must show: (1) the defendant made an "oral or written statement . . . that was either false or misleading"; (2) "the false or misleading representation must have been knowingly made in connection with the sale . . . of goods or services"; (3) "the conduct complained of must have occurred in the regular course of the [defendant's] trade or commerce"; and (4) "the representation must have been of the type that may, tends to or does, deceive or mislead any person." *Ashlock v. Sunwest Bank of Roswell, N.A.*, 1988-NMSC-026, ¶ 4, 107 N.M. 100, 753 P.2d 346 (internal quotation marks and citation omitted), *overruled on other grounds by Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 16, 120 N.M. 133, 899 P.2d 576; *see* UJI 13-2501 NMRA.

**{16}** By the summary judgment stage, the district court had limited Plaintiffs' UPA cause of action to claims arising under Section 57-12-2(D)(14), which prohibits "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive." Plaintiffs' briefing indicates that their UPA claim was "based on the misleading statement and related omissions that [Lastra] prepared and communicated in the IOP and thereafter." Plaintiffs do not, however, identify what the alleged false statements or omissions were in substance. As we understand them, Plaintiffs' claims in the district court were that (1) the IOP misrepresented the businesses' expected cash flow and profits, (2) Lastra failed to disclose the loss of a major customer, and (3) Lastra failed to disclose the loss of a state contract. The district court made several factual findings after trial regarding these allegations that negate the first and second elements of Plaintiffs' UPA claim.

**{17}** Under the first element, requiring Plaintiffs to show that Lastra made a statement "that was false or misleading," the district court made several findings to the effect that Lastra did not provide false information to Plaintiffs. *Ashlock*, 1988-NMSC-026, ¶ 4. The district court found that "[t]he IOP did not include any misrepresentations when it was provided to Gutierrez in February of 2015." The court also noted that "[t]he statements in the IOP concerning the volume and gross profit margin of PTE's paint sales were accurate when included in the IOP in February of 2015. The loss of TLR Palomas as a PTE customer . . . did not occur until April . . . of 2015." In addition, the court found that "the information that Lastra provided to Gutierrez in the IOP and throughout 2015 and 2016 regarding the Performance [C]ompanies was accurate." These findings tend to establish that Lastra did not make any false statements and therefore negate the first element of Plaintiffs' UPA claim.

**{18}** In support of their claim, Plaintiffs primarily rely on the district court's finding that "[t]he statements in the IOP concerning the [g]overnment [c]ontracts were not entirely accurate when made." However, the district court also found that "*neither Padilla nor Lastra knew that those statements were not entirely accurate*, and those statements

were accurate enough that they were not recklessly made by either Padilla or Lastra." (Emphasis added.) In addition, the district court found that "Lastra fulfilled his obligation to exercise ordinary care in communicating the statements made in the IOP" and that "Lastra fulfilled his duty of ordinary care when he made further statements about the business and operations of the Performance Companies throughout 2015 and in 2016 leading up to the closing of the SPA transaction." Accordingly, even if the IOP's statements about the government contracts could constitute a false or misleading statement under the first element of a UPA claim, the claim nevertheless fails under the second element because Lastra did not know the statement was false and exercised reasonable diligence when preparing the IOP. *See OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 2022-NMCA-035, ¶ 39, 514 P.3d 40 ("The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." (internal quotation marks and citation omitted)).

**{19}** Lastra pointed to these findings in his answer brief and argued that Plaintiffs' UPA claim failed on multiple grounds. Plaintiffs, however, did not address this argument in their reply brief, have not challenged these findings on appeal, and do not direct us to any false or misleading statements not covered by the district court's findings. Accordingly, the district court's findings are binding on appeal and, as a result, eliminate any dispute as to these material facts. And because the district court's unchallenged findings negate two elements of Plaintiffs' UPA claim, the claim fails as a matter of law. *See Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶¶ 14-15, 114 N.M. 228, 836 P.2d 1249 (stating that summary judgment is appropriate when there are no genuine issues of material fact and the defendant has negated at least one of the essential elements of the plaintiff's claim). Consequently, we conclude there is no basis to reverse the district court's grant of summary judgment on Plaintiffs' UPA claim against Lastra.

## B.    Negligent Misrepresentation

**{20}** Plaintiffs also challenge the district court's summary judgment ruling on their negligent misrepresentation claim against Lastra, arguing the court erred in narrowing the scope of their claim to only those misrepresentations contained in the IOP at the time it was provided to them and not after. According to Plaintiffs, "Lastra offered information in the IOP . . . that he later learned was incorrect." Plaintiffs argue that Lastra had a duty to update that information, and his failure to do so amounted to a misrepresentation by omission. *See Robertson v. Carmel Builders Real Est.*, 2004-NMCA-056, ¶ 31, 135 N.M. 641, 92 P.3d 653 ("An omission as well as an act, may constitute fraud. When one is under the duty to speak, but remains silent and so fails to disclose a material fact, he may be liable for fraud." (internal quotation marks and citation omitted)).

**{21}** While we agree with the general proposition that a duty to disclose may be breached by omission, New Mexico has recognized that the scope of the duty to

disclose varies based on the relationship of the parties. Where the parties have a fiduciary relationship, there is a duty of full disclosure, which requires affirmative disclosure of "all facts within the [fiduciary's] knowledge that bear materially upon the principal's interests." 23 R.A. Lord, *Williston on Contracts*, § 62:18, Westlaw (4th ed. database updated May 2022); *Fate v. Owens*, 2001-NMCA-040, ¶ 25, 130 N.M. 503, 27 P.3d 990 (providing that "the duty of disclosure is a hallmark of a fiduciary relationship"). In the absence of a fiduciary relationship—i.e., in an arm's length business transaction—a duty to disclose arises only when the party "has *actual knowledge* of both the undisclosed information and the fact that the plaintiff is proceeding in ignorance of facts basic to the transaction." *McElhannon v. Ford*, 2003-NMCA-091, ¶ 13, 134 N.M. 124, 73 P.3d 827.

**{22}** Plaintiffs did not establish below, and have not argued on appeal, that Lastra was their fiduciary.[1] Nor does the authority Plaintiffs rely on—which largely involve fiduciary relationships—demonstrate that a duty of full disclosure applies even in the absence of a fiduciary relationship. *See Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶¶ 20-21, 310 P.3d 611 (holding that a lawyer committed a misrepresentation by omission if he failed to notify a client that the statute of limitations had passed); *Robertson*, 2004-NMCA-056, ¶¶ 31-32 (holding that a real estate agent had a duty to disclose unauthorized negotiations with a buyer); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 1988-NMCA-111, ¶¶ 12, 17, 108 N.M. 84, 766 P.2d 928 (holding a duty to disclose existed where a bank and the plaintiff had a contract that "expressly repose[d] a trust and confidence in the other"). Accordingly, Plaintiffs have not established that a duty of full disclosure applies here.

**{23}** In the absence of a fiduciary relationship, the defendant must have actual knowledge of the other party's ignorance. *See McElhannon*, 2003-NMCA-091, ¶ 13. On appeal, Plaintiffs have not established that Lastra had actual knowledge that Plaintiffs were ignorant of facts basic to the transaction, particularly when Plaintiffs were provided access to accurate information about the Performance Companies' finances, business operations, and customers. *See id.* Accordingly, Plaintiffs have failed to demonstrate that the district court erred in granting summary judgment on this portion of their negligent misrepresentation claim.

## II.	Claims Involving Padilla

### A.	Plaintiffs' Tort Claims

**{24}** Plaintiffs challenge the district court's grant of summary judgment in favor of Padilla on Plaintiffs' tort claims. Plaintiffs alleged that Padilla committed a number of torts in addition to the alleged breaches of contract. The district court dismissed

---

[1]Lastra argued in his motion for summary judgment that he was not a fiduciary but was "simply the middleman in an arm's-length business transaction," quoting 16.61.19.9(A) NMAC ("The transaction broker relationship is a non-fiduciary relationship."). The district court found that the confidentiality agreement Plaintiff Gutierrez signed before receiving the IOP stated that Lastra was acting "only as a 'transaction broker.'"

Plaintiffs' tort claims, concluding that they were barred by the economic loss doctrine. On appeal, Plaintiffs argue this doctrine does not apply outside the context of products liability. However, Plaintiffs failed to preserve this argument and therefore, we decline to reach the merits of their challenge.

**{25}** New Mexico adopted the economic loss doctrine in *Utah International, Inc. v. Caterpillar Tractor Co.*, where a coal hauler caught fire during normal use and destroyed itself. 1989-NMCA-010, ¶ 7, 108 N.M. 539, 775 P.2d 741. The plaintiff sought tort damages for the loss. *Id.* ¶ 1. This Court held that "in commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses . . . may only be recovered in contract actions." *Id.* ¶ 17 (citation omitted); *see also NM-Emerald, LLC v. Interstate Dev., LLC*, 2021-NMCA-020, ¶ 9, 488 P.3d 707. To date, New Mexico courts have only applied the doctrine in cases involving products liability. *See NM-Emerald*, 2021-NMCA-020, ¶ 9; *Utah Intern., Inc.*, 1989-NMCA-010, ¶ 17 ("We specifically do not address the question of whether the same rule should apply to non-commercial consumers who suffer similar injuries.").

**{26}** While Plaintiffs urge us to conclude that the rule has no application in this case because this was not a products liability action, we see no indication that they made this argument below. Padilla argued in his motion for summary judgment that Plaintiffs sought economic loss damages that flowed from an alleged breach of the SPA, which were barred by the economic loss rule. In response, Plaintiffs argued that their claims for fraud and misrepresentation were independent from their contract claims, and that New Mexico has consistently allowed tort claims based on intentional or negligent misrepresentations to exist alongside contract claims. During the hearing on the motion, the parties focused on Plaintiffs' intentional tort claims, and the court questioned the parties on whether there was a basis for the intentional tort claims that was separate and apart from the breach of contract claims. Concluding that the intentional acts Plaintiffs complained of were subsumed in their contract claims, the district court granted Padilla's motion.

**{27}** Plaintiffs did not argue below that the economic loss doctrine does not apply outside the products liability context, and the district court did not have an opportunity to consider or rule upon this argument. *See Sandoval v. Baker Hughes Oilfield Ops., Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 (stating that "[t]he primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue"). Because the issue was not preserved, we decline to rule on it here. *See Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."); Rule 12-321 NMRA (same).

## B.      Damages Claim Based on Tax Liability

**{28}**   Plaintiffs challenge the district court's dismissal of their claim for damages based on PTE's potential tax liability. The tax issue arose because Padilla took a loan from PTE in 2014, did not report it on his personal income taxes, and reported it on PTE's tax return as bad debt deduction. Plaintiffs claim that (1) the deduction was improper and created a substantial tax liability for PTE, (2) the tax liability reduced the value of PTE, and (3) Padilla must indemnify them under an indemnification clause in the SPA. The district court dismissed Plaintiffs' claim for damages based on the bad-debt deduction during trial, concluding that the damages were merely speculative and, therefore, there was not sufficient evidence to support the claim.

**{29}**   On appeal, Plaintiffs argue the district court erred because the amount of damages was reasonably certain—both parties' experts testified that the tax liability would amount to two to three hundred thousand dollars. Nevertheless, we affirm the district court's conclusion because, as we explain, even if the *amount* of the tax liability was reasonably certain, whether Plaintiffs would be forced to pay it was not.

**{30}**   Plaintiffs have not argued that they incurred any actual damages as a result of the bad debt deduction. As to whether PTE would be subject to tax liability for the bad-debt deduction in the future, both parties' experts testified that the IRS three-year statute of limitations for auditing tax returns had passed by the time of trial. While there is an exception to this limitations period if the IRS finds evidence of an intent to commit tax fraud, Padilla's expert, Carl Alongi testified that since Padilla did not prepare or file the tax returns himself, the IRS would not likely find any appearance of fraudulent intent. And because the limitations period had passed, Alongi testified that the IRS could only learn of the improper deduction if it randomly selected PTE's taxes through a lottery, or if PTE self-reported. At the time of trial, PTE had not self-reported. Alongi also testified that even if PTE was selected through the lottery, it was highly unlikely that the IRS would go back six years to 2014. Accordingly, the evidence supported the district court's conclusion that any prospective damages related to the bad debt deduction were merely speculative.

**{31}**   Plaintiffs likewise failed to demonstrate that the bad-debt deduction decreased PTE's value. At the time Plaintiffs purchased the Performance Companies, their bank hired Gulf Coast Financial to conduct a valuation of the businesses. Gulf Coast Financial's report was tendered as an exhibit at trial and expressly stated that the bad-debt deduction did not affect its valuation of PTE. The district court credited Gulf Coast Financial's valuation methodology as "appropriate, fair, reasonable, and credible" and found that "the purchase price for the Performance Companies' stock was fair and reasonable." In addition, when asked by the district court during trial how the tax liability affected the value, Plaintiffs' expert, Sam Baca, did not know what the decrease in value to the company would be. On appeal, Plaintiffs do not address this evidence and do not direct us to any evidence in the record to establish that the improper deduction actually reduced the value of PTE. Because Plaintiffs fail to offer any more than a bald

assertion that the value of PTE was affected by the bad-debt deduction, we find no error in the district court's dismissal of this claim.

**{32}**   Finally, while Plaintiffs argue that Padilla should have been required to indemnify Padilla for "any future tax liability," again, Plaintiffs did not prove any actual damages at the time of trial that would trigger the indemnification clause in the parties' contract. For all of these reasons, we affirm the district court's dismissal of Plaintiffs' claim for damages related to the bad-debt deduction.

## C.      Padilla's Counterclaim

**{33}**   Plaintiffs challenge the district court's ruling that Plaintiffs breached an inventory agreement executed as an addendum to the SPA. The district court found that Plaintiffs had breached two sections of this agreement and awarded Padilla damages. First, the inventory agreement provided that Plaintiffs would compensate Padilla for any new inventory that exceeded $950,000 at the time of closing. The district court found that inventory at closing was worth $1,062,149.11 and therefore, Plaintiffs owed Padilla $112,149.11. Second, the inventory agreement provided that Plaintiffs would compensate Padilla for (1) the net cost of each used inventory item, and (2) 50 percent of the net profit on used inventory items within five days of sale. The district court found that Plaintiffs owed Padilla $23,600 for used inventory. On appeal, Plaintiffs argue that the district court (1) wrongly determined the value of the new inventory at the time of sale and (2) did not find that Plaintiffs had sold any used inventory, and therefore had no basis for requiring Plaintiffs to compensate Padilla.

**{34}**   We review a district court's findings of fact under the substantial evidence standard. *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. Under this standard, "we review the evidence in the light most favorable to support the trial court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Id.* "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Pro. Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.*

**{35}**   Plaintiffs argue that the district court erred in requiring Plaintiffs to compensate Padilla for new inventory in excess of $950,000 at the time of closing. Plaintiffs assert that the value of the inventory at that time was $851,759.65 and therefore, no amount was owed to Padilla. They argue (1) the balance sheets at the time of closing show the value of the inventory was worth $851,759.65 and (2) Padilla previously acknowledged this lower value by writing a check to make up the difference.

**{36}**   In determining the value of the inventory, the district court had to choose between two conflicting pieces of evidence. The balance sheets indicated the inventory was worth $851,759.65, but a physical inventory had been taken and it showed that the value was $1,026,188.84. The district court resolved this conflict by determining that

"inactive inventory" had not been included in the balance sheets. As the finder of fact, the district court has the discretion to weigh the evidence, and under the sufficiency of the evidence standard, we will not second guess the district court or reweigh the evidence. *See id.* We look only at the evidence supporting the district court's conclusions, and determine whether a rational fact-finder would think it sufficient. *Jones*, 2005-NMCA-124, ¶ 8. Based on the physical inventory evidence, there was sufficient evidence supporting the district court's findings of fact regarding the value of the new inventory.

**{37}**     Plaintiffs' second argument concerns the sale of used inventory. Plaintiffs argue there was insufficient evidence to support the district court's ruling that they breached the inventory agreement and owed Padilla $23,600 for the sale of used inventory because the district court never explicitly found that any sales had occurred. However, the district court heard testimony from Padilla regarding what used inventory was sold and received an exhibit regarding the same. "The testimony of a single witness, if found credible by the district court, is sufficient to constitute substantial evidence supporting a finding." *Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207. We conclude that Padilla's testimony and the used inventory exhibit were sufficient to support the district court's award of damages for the sale of used inventory.

**D.     Plaintiffs' Breach of Contract Claim**

**{38}**     Plaintiffs challenge the district court's ruling that Padilla did not breach the SPA's provision warranting that "[t]here has been no material change in the business operations of the Companies since the Letter of Intent." This included no substantial financial loss, no loss of any major customer, no termination of any material contract, and no loss of any key employee. Plaintiffs claimed that Padilla breached this section by failing to disclose that he lost a major customer, several municipal contracts had expired, and an important employee had resigned. The district court ultimately made findings demonstrating that none of the alleged changes occurred during the period between the second letter of intent and the signing of the SPA, and also found that Padilla had no duty to disclose this information to Plaintiffs and that Plaintiffs were responsible for their own due diligence. Plaintiffs challenge only the district court's findings regarding Padilla's duty to disclose and the materiality of this information on appeal.

**{39}**     As an initial matter, it is not evident that any breach occurred because all of the changes Plaintiffs complain of occurred before the parties entered into the second letter of intent in November 2015. The district court found that "[Plaintiffs] received accurate financial and customer information concerning the Performance Companies through December 7, 2015, including sales-by-customer reports." Plaintiffs claim Padilla failed to disclose the loss of an allegedly major customer, TLR Palomas, but that customer "was lost in April of 2015." In addition, the government contract "was terminated in August 2015," and the employee Plaintiffs claim was key "left his employment in May of 2015." Therefore, the district court found that "[t]he Performance Companies had not lost any major customer or had any material orders or contracts canceled, nor did Padilla know

of any threatened cancellation of any material order or contract since the execution of the [s]econd [letter of intent]" and concluded that "[t]here were no material changes to the business operations of the Performance Companies in 2015." Plaintiffs have not challenged these findings on appeal, and so we accept them as true.[2] *See Seipert,* 2003-NMCA-119, ¶ 26.

**{40}** To the extent Plaintiffs argue that Padilla had an affirmative duty to disclose these changes or that the district court otherwise erred in concluding that Plaintiffs could have discovered this information through due diligence, Plaintiffs have not met their burden of demonstrating error on appeal. As previously discussed, the extent of the duty to disclose varies depending the parties' relationship, and Plaintiffs have not challenged the district court's finding that "Padilla and [Plaintiffs] were involved in an arm's-length-business transaction and did not share a fiduciary relationship." Therefore, there was no duty of full disclosure, and Plaintiffs have not argued on appeal that Padilla had actual knowledge that Plaintiff Gutierrez was ignorant of basic facts. *See McElhannon*, 2003-NMCA-091, ¶ 13. During the due diligence period, Plaintiffs had access to all financial records of the company, and "Padilla never prevented [Plaintiffs] from accessing the financial and customer data of the Performance Companies." In addition, Plaintiffs had actual knowledge that the most significant government contract had expired before Plaintiff Gutierrez signed the SPA. Thus, Padilla fulfilled his contractual duty to disclose all material changes to the business and we detect no error in the district court's conclusion that Padilla did not breach the SPA's warranties.

**CONCLUSION**

**{41}** We affirm.

**{42}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**KATHERINE A. WRAY, Judge**

---

[2]Plaintiffs assert that Padilla failed to disclose that the El Paso branch manager had threated to leave. However, as Padilla points out in his answer brief, this employee stayed on for nearly three years after the closing.